# Exhibit E

# NYLS' GOVERNOR'S BILL JACKET

## 1986
## CHAPTER 903

### 79 PAGES

## Terms and Conditions

This legislative history has been furnished by New York Legislative Service, Inc. It consists of the official Governor's Bill Jacket, with enhancements consisting of any other relevant material that we can supply such as Committee Reports, Commission Reports, Senate and Assembly debate transcripts, public hearing transcripts, memoranda, and news clippings. It *may* be specifically tailored to a section of the Statutes which you requested, and may also be updated from time to time. These additional pages are clearly marked and are copyrighted as a compilation.

**Legislative histories purchased on behalf of your client may not be copied for archiving in your library, nor for distribution. This compiled legislative history may not be loaned or copied, nor submitted for inclusion on a union list for loan or copy.**

New York Legislative Service is a completely self-supporting, not-for-profit organization which operates as a service to the community. Essentially, our expert services are provided at cost, and we keep our fees as low as possible. These document fees are based upon a one-time usage by our clients and are our main source of income. Thank you for supporting our organization and helping us to maintain our services!

© **Copyrighted as a compilation by**

# NEW YORK LEGISLATIVE SERVICE, INC.

### The Research Specialists on Legislative Intent and Current Legislation.

A NEW YORK NOT-FOR-PROFIT CORPORATION. ESTABLISHED 1932.

15 Maiden Lane, New York, NY 10038  (212) 962-2826  www.nyls.org

CHAPTER _9_ _of_ _86_

LAWS OF 19 _86_

SENATE BILL _5549-C_                    ASSEMBLY BILL _14.75_

Cal. No. 364                5549--C                **864**

1985-1986 Regular Sessions

# IN SENATE

May 2, 1985

Introduced by Sens. LACK, FLYNN -- read twice and ordered printed, and
when printed to be committed to the Committee on Labor -- committee
discharged, bill amended, ordered reprinted as amended and recommitted
to said committee -- recommitted to the Committee on Labor in accord-
ance with Senate Rule 6, sec. 8 -- reported favorably from said com-
mittee with amendments and ordered reprinted as amended and when re-
printed to be committed to the order of first report -- ordered to
second report, ordered to a third reading, passed by Senate and
delivered to the Assembly, recalled, vote reconsidered, restored to
third reading, amended and ordered reprinted, retaining its place in
the order of third reading

AN ACT to amend the labor law and the workers' compensation law, in
relation to musicians and artists, qualified real estate agents and
coverage of owners and operators of taxicabs

IN THE ASSEMBLY BY:  FODBACH, BARBARO, McPHILLIPS,
A. 1596-A  FORDUM, M.S; ABRAMSON,
COLMAN, CONNERS, GOTTFRIED,
GRABER, GREENE, GRIFFITH, HADLEY,
HEALEY, LARKIN, LIPSCHUTZ,
MADISON, NEWBURGER, PILLITERE,
SARAND, SEABROOK, STRANIERE,

Bill compared by _____  DATE RECEIVED BY GOVERNOR:

7/24/86

ACTION MUST BE TAKEN BY:

8/3/86

GOVERNOR'S ACTION:

DATE **AUG 5 1986**

Memorandum No. _____

000001

000002

SENATE VOTE _5/_ Y _7_ N          HOME RULE MESSAGE ___ Y ___ N

Date ___ *3/12/86* ___          Bill is disapproved

ASSEMBLY VOTE *138* Y _0_ N          _____

Date ___ *6/19/86* ___          _____

          Counsel to Governor

**1986**

SENATE JOURNAL
3/12/86
PAGE 53

# SENATE

The Senate Bill by Mr. **LACK**        Calendar No. _364_        Senate No. _5549-C_        Assem. Rept. No. _____

Entitled: "

> 5549-C        LACK
> An act to amend the labor law and the workers' compensation law, in relation to musicians and artists, qualified real estate agents and coverage of owners and operators of taxicabs

DEBATE WAS HAD THEREON

" was read the third time

The President put the question whether the Senate would agree to the final passage of said bill, the same having been printed and upon the desks of the members in its final form at least three calendar legislative days, and it was decided in the affirmative, a majority of all the Senators elected voting in favor thereof and three-fifths being present, as follows:

| AYE | Dist. | | NAY | AYE | Dist. | | NAY |
|---|---|---|---|---|---|---|---|
| | 51 | Mr. Anderson | | | 21 | Mr. Markowitz | |
| | 17 | Mr. Babbush | | | 58 | Mr. Masiello | |
| | 20 | Mr. Bartosiewicz | EXCUSED | | 46 | Mr. McHugh | — |
| | 33 | Mr. Bernstein | | | 23 | Mr. Mega | |
| | 43 | Mr. Bruno | | | 30 | Mrs. Mendez | |
| | 25 | Mr. Connor | | | 22 | Ms. Montgomery | |
| | 40 | Mr. Cook | | | 42 | Mr. Nolan | |
| | 61 | Mr. Daly | — | | 27 | Mr. Ohrenstein | |
| | 47 | Mr. Donovan | | | 14 | Mr. Onorato | |
| | 6 | Mr. Dunne | | | 36 | Mrs. Oppenheimer | |
| | 44 | Mr. Farley | | | 11 | Mr. Padavan | |
| | 60 | Mr. Floss | — | | 29 | Mr. Paterson | |
| | 35 | Mr. Flynn | | | 54 | Mr. Perry | |
| | 31 | Mr. Galiber | | | 56 | Mr. Present | |
| | 13 | Mr. Gold | | | 55 | Mr. Quattrociocchi | EXCUSED |
| | 37 | Mrs. Goodhue | | | 50 | Mr. Riford | — |
| | 26 | Mr. Goodman | | | 41 | Mr. Rolison | |
| | 18 | Mr. Halperin | | | 32 | Mr. Ruiz | |
| | 48 | Ms. Hoffmann | | | 39 | Mr. Schermerhorn | |
| | 10 | Mr. Jenkins | | | 9 | Mr. Skelos | |
| | 4 | Mr. Johnson | | | 52 | Mr. Smith | — |
| | 53 | Mr. Kehoe | — | | 19 | Mr. Solomon | |
| | 15 | Mr. Knorr | | | 57 | Mr. Stachowski | |
| | 2 | Mr. Lack | | | 45 | Mr. Stafford | |
| | 1 | Mr. LaValle | | | 12 | Mr. Stavisky | EXCUSED |
| | 28 | Mr. Leichter | | | 3 | Mr. Trunzo | |
| | 38 | Mr. E. Levy | | | 7 | Mr. Tully | |
| | 8 | Mr. N. Levy | | | 34 | Mr. Velella | |
| | 49 | Mr. Lombardi | — | | 59 | Mr. Volker | |
| | 24 | Mr. Marchi | | | 16 | Mr. Weinstein | |
| | 5 | Mr. Marino | | | | | |

**000003**

AYES _51_
NAYS _7_

Ordered, that the Secretary deliver said bill to the Assembly and request its concurrence therein.

REPRINT NO: 001
DATE: 06/13/96

NEW YORK STATE ASSEMBLY

Case 1:07-cv-03778-DC    Document 11-6    Filed 10/19/2007    Page 6 of 40

BILL: S5549-C(A1596-A)

R.R. NO: 418   SPONSOR: LACK--

TIME: 12:28:01 PM

AN ACT TO AMEND THE LABOR LAW AND THE WORKERS' COMPENSATION LAW, IN RELATION TO MUSICIANS AND ARTISTS, QUALIFIED REAL ESTATE AGENTS AND COVERAGE OF OWNERS AND OPERATORS OF TAXICABS

| | | | | | |
|---|---|---|---|---|---|
| Y | ABRAMSON,E | Y | HALPIN,PG | Y | PASSANNANTE,WF |
| Y | BARBARO,FJ | Y | Hannon,K | Y | Pataki,GE |
| Y | Barnett,HH | Y | HARENBERG,PE | Y | PATTON,BA |
| Y | Barraga,TF | Y | Harris,GH | Y | Paxon,LW |
| Y | Becker,GR | Y | Hawley,RS | Y | PILLITTERE,JT |
| ABS | Behan,JL | Y | Healey,PB | Y | PORDUM,FJ |
| Y | BENNETT,LE | Y | HEVESI,AG | Y | Prescott,DW |
| Y | BIANCHI,IW | Y | HIKIND,D | Y | Proskin,AH |
| Y | BOYLAND,WF | Y | HINCHEY,MD | Y | PROUD,G |
| Y | BRAGMAN,MJ | Y | HOYT,WB | ABS | Rappleyea,CD |
| Y | BRENNAN,JF | ABS | JACOBS,RS | Y | Rattaliata,AP |
| Y | BRODSKY,RL | Y | JENKINS,C | Y | RIVERA,J |
| Y | Burrows,GW | Y | KEANE,RJ | Y | ROBACH,RJ |
| Y | Bush,WE | Y | Kelleher,NW | Y | Saland,SM |
| •Y | BUTLER,DJ | Y | KOPPELL,GO | Y | SANDERS,S |
| Y | Casale,AJ | Y | KRAMER,DM | Y | Sawicki,J |
| Y | CATAPANO,TF | Y | KREMER,AJ | Y | SCHIMMINGER,RL |
| Y | Chesbro,RT | Y | Kuhl,JR | Y | SCHMIDT,FD |
| Y | Cochrane,JC | Y | LAFAYETTE,IC | Y | SEABROOK,L |
| Y | COLMAN,S | Y | Lane,CD | Y | Sears,HR |
| Y | CONNELLY,EA | Y | Larkin,WJ | Y | SEMINERIO,AS |
| Y | CONNERS,RJ | Y | LASHER,HL | Y | SERRANO,JE |
| Y | CONNOR,RJ | Y | Leibell,VL | Y | Sheffer,JB |
| Y | Cooke,AT | Y | LENTOL,JR | Y | SIEGEL,MA |
| Y | Coombe,RI | Y | LIPSCHUTZ,GE | Y | SILVER,S |
| ABS | DAmato,AP | Y | LOPEZ,VJ | Y | SLAUGHTER,LM |
| Y | DAndrea,RA | Y | MacNeil,HS | Y | Spano,NA |
| Y | DANIELS,GL | Y | Madison,GH | Y | Straniere,RA |
| Y | DAVIS,G | Y | MARSHALL,HM | Y | SULLIVAN,EC |
| Y | DEARIE,JC | Y | MAYERSOHN,N | Y | Sullivan,PM |
| Y | DEL TORO,A | Y | McCann,JW | Y | TALLON,JR |
| Y | DIAZ,HL | Y | MCNULTY,MR | •Y | Talomie,FG |
| Y | DUGAN,EC | Y | MCPHILLIPS,MM | Y | Tedisco,J |
| Y | ENGEL,EL | Y | Miller,HM | Y | TOCCI,RC |
| Y | EVE,AO | Y | Miller,MH | Y | TONKO,PD |
| Y | FARRELL,HD | Y | Miller,RH | EOR | VANN,A |
| ABS | FELDMAN,D | Y | MURPHY,MJ | Y | VITALIANO,EN |
| Y | Ferraro,AA | Y | MURTAUGH,JB | ABS | WALDON,AR |
| Y | Flanagan,JJ | Y | NADLER,J | Y | WALSH,DB |
| Y | FRIEDMAN,G | Y | Nagle,JF | Y | Warren,GE |
| Y | Frisa,D | Y | NEWBURGER,MW | Y | HEINSTEIN,HE |
| Y | Gaffney,RJ | ABS | NOLAN,CT | Y | WEPRIN,S |
| Y | GANTT,DF | Y | Nortz,HR | Y | Hartz,RC |
| Y | GORSKI,DT | Y | Nozzolio,MF | Y | Wesley,RC |
| Y | GOTTFRIED,RN | Y | ONeil,JG | Y | Winner,GH |
| Y | GRABER,VJ | Y | Ortloff,C | Y | YEVOLI,LJ |
| Y | GRANNIS,A | Y | PARMENT,WL | Y | YOUNG,GP |
| EOR | GREEN,RL | Y | Parola,FE | Y | ZIMMER,MN |
| Y | GREENE,A | | | | MR. SPEAKER |
| Y | GRIFFITH,E | | | | |

YEAS: 138                NAYS: 0

CONTROL: 33523024

CERTIFICATION: _____

LEGEND: Y=YES,NAY=NO,NV=ABSTAIN,ABS=ABSENT,
ELB=EXCUSED FOR LEGISLATIVE BUSINESS,EOR=EXCUSED FOR OTHER REASONS.

000004



THE SENATE
STATE OF NEW YORK
ALBANY 12247

IF INDICATED, PLEASE RESPOND TO
DISTRICT OFFICE
( ) 3842 NEW YORK STATE OFFICE BUILDING
VETERANS MEMORIAL HIGHWAY
HAUPPAUGE, NEW YORK 11788
MAIN OFFICE & SMITHTOWN:
(516) 360-6623
TIE LINES:
BROOKHAVEN 467-2523
HUNTINGTON 421-3737

JAMES J. LACK
2ND DISTRICT
CHAIRMAN
LABOR COMMITTEE
ALBANY:
(518) 455-2071

June 25, 1986

## MEMORANDUM

TO:     The Honorable Evan Davis
        Counsel to the Governor

FROM:   Senator James J. Lack

RE:     Senate Bill 5549-C

     This legislation would amend the Labor Law to bring professional musicians and performing artists under coverage of the Unemployment Insurance Law and to exempt qualified real estate agents from coverage under such law.  It would amend the Workers' Compensation Law to extend coverage for on-the-job injuries to musicians, persons in the performing arts and taxi drivers.  The bill would exclude qualified real estate agents from coverage under the Workers' Compensation Law.

     This legislation would clarify any confusion which presently exists regarding coverage of musicians and taxi drivers under Unemployment Insurance and Workers' Compensation.  There appears to be some confusion regarding the responsibility for providing coverage for the social benefit programs for musicians and taxi drivers.  This legislation would clarify this and require unemployment insurance and workers' compensation coverage for these persons.  It would also bring New York State law into conformity with Federal law regarding coverage of qualified real estate agents, and thus clarify any confusion regarding whether or not they are required to be covered.

     I respectfully request that the Governor sign this legislation into law.

000005

A4

S5549-C



# THE ASSEMBLY
## STATE OF NEW YORK
### ALBANY

**ROGER J. ROBACH**
134th DISTRICT
MONROE COUNTY
ROOM 824-L.O. B.
ALBANY, NEW YORK 12248
(518) 455-4664

DISTRICT OFFICE
2200 WEST RIDGE ROAD
ROCHESTER, NEW YORK 14626
(716) 225-4190

July 28, 1986

CHAIRMAN, COMMITTEE ON
COMMERCE, INDUSTRY & ECONOMIC DEVELOPMENT

MEMBER
STANDING COMMITTEES ON
ETHICS
TRANSPORTATION
WAYS & MEANS
VETERANS AFFAIRS
SMALL BUSINESS

The Honorable Evan Davis
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York   12224

Re: S. 5549-C

Dear Mr. Davis:

I am writing to urge your favorable consideration and support for Senate
Bill Number 5549-C, which is the companion to my bill, A.1596-A. This bill
is currently awaiting action by the Governor.

S. 5549-C will add clarity to the Labor Law and Workers Compensation
Law for three important groups of workers. First, it will make clear that
real estate brokers would be exempt from workers compensation and unemployment
insurance coverage, should those individuals meet the standards of the defin-
ition test set forth to determine if he or she is an independent contractor.
Further, in response to the Governor's disapproval message for similar
legislation in 1984, this measure would make it clear that any contract
defining an individual as an independent contractor must not have been executed
under duress, thereby ensuring that the person is exercising a willful
determination concerning their benefits in order to pursue his or her
career as an independent practicioner in the real estate field. This measure
would benefit all involved in the real estate industry as well as provide
equity with federal provisions.

Similarly, the provisions dealing with the lessees of taxicabs and professional
musicians and performers will add necessary clarity to the law. It will
provide an accurate reflection in statute of the practical realities of the
marketplace. With regard to taxicab lessees, it will eliminate protracted
trials in compensation claims where the lease arrangement is solely for the
benefit of the cab owner and the driver or operator possesses no equity
interest in the cab. Concerning musicians and performers, the vast majority
who are not in the "star" catagory are under the direction of an employer,

Mr. Davis 7/28/86
Page 2

whether directly or as a contractor. Under common law these groups are eligible
as employees since they meet the test of being under an employer's direction,
supervision, and control. Currently these employees must now litigate to
be awarded their due benefits. Case law has consistently found in the
employees favor. This bill additionally and importantly will cover those
individuals who do not realizetheir rights, they then will receive their
rightful benefits.

For the above stated reasons, I urge you to encourage the Governor to
sign S. 5549-C into law. If you have any further questions, please feel
free to contact me.

Sincerely,

Roger J. Robach
Member of Assembly

B-203 (12/75)　　　　　**BUDGET REPORT ON BILLS**　　　　　Session Year　1986

**SENATE**　　　　　　　　NO RECOMMENDATION　　　　　　　　**ASSEMBLY**

No.　5549-C

No.

Law:　Labor
　　　　Workers' Compensation

Title:　~~AN ACT to amend the labor law and the workers' compensation law~~, in relation to

~~musicians and artists, qualified real estate agents and coverage of owners and operators~~

~~of taxicabs~~

　　　The above bill has been referred to the Division of the Budget for
comment.　After careful review, we find that the bill has no appreciable
effect on State finances or programs, and this office does not have the
technical responsibility to make a recommendation on the bill.

　　　We therefore make no recommendation.

David M. Richter



**New York State Department of Commerce**

Lesley Douglass Webster

Deputy Commissioner and Counsel
One Commerce Plaza
Albany, New York 12245   518-474-4102


TEN DAY BILL MEMORANDUM

July 2, 1986


TO:            EVAN A. DAVIS
               COUNSEL TO THE GOVERNOR

FROM:          Lesley Douglass Webster

SUBJECT:       S. 5549-C (Lack et al.)

RECOMMENDATION: No Objection

    The Department of Commerce has no objection to this
bill which would amend the Labor Law and the Workers
Compensation Law to clarify the circumstances under which
musicians, performing artists, real estate agents, and
taxicab operators are covered by unemployment and workers'
compensation insurance.


                        L.D.W.


LDW:sw



STATE OF NEW YORK

IN SENATE

R 2 65

By Senator __LACK__

Resolved (if the Assembly concur), that the Assembly return to the

Senate, the Senate Bill No. _5549B_

(Insert Title)

By order of the Senate,

Secretary

IN ASSEMBLY

**MAY    13 ● 1986**
_____ 19 _____

Concurred in without amendments.

By order of the Assembly,

_Francine M. Musari_

Clerk

Form No. 26-A — Recall Senate Bill from Assembly    000010

# STATE OF NEW YORK

In Senate                                                        MAR 12    1986

This bill was duly passed, a majority of all the Senators elected voting in favor thereof, three-fifths being present.

By order of the Senate,

_Acting President._

# STATE OF NEW YORK

In Assembly                                                        1986

This bill was duly passed, a majority of all the members elected to the Assembly voting in favor thereof, **three-fifths** being present.

By order of the Assembly,

Speaker.

Form No. 60                     CC0011

1549-B                    LACK
An act to amend the labor law and the
    workers' compensation law, in relation to
    musicians and artists, qualified real es-
    tate agents and coverage of owners and
    operators of taxicabs

LBDC            05/06/86        V30: *Pi5 7/20*

*LABOLA*
(Workers' compensation; real estate agents; musicians; owners aid opera-
tors of taxicabs)
Lab. realtors, work comp.


By

Amend SENATE BILL NO. 5549-B, as follows:


Strike out all after the enacting clause and insert


   Section 1. Paragraph (b) of subdivision one of section five hundred
eleven of the labor law is amended by adding a new subparagraph one-a to
read as follows:
   (1-a) as a professional musician or a person otherwise engaged in the
performing arts, and performing services as such for a television or
radio station or network, a film production, a theatre, hotel, restau-
rant, night club or similar establishment unless, by written contract,
such musician or person is stipulated to be an employee of another em-
ployer covered by this chapter. "Engaged in the performing arts" shall
mean performing services in connection with the production of or per-
formance in any artistic endeavor which requires artistic or technical
skill or expertise; or
   § 2. Section five hundred eleven of such law is amended by adding a
new subdivision nineteen to read as follows:
   19. Qualified real estate agent. The term "employment" shall not in-
clude the services of a licensed real estate broker or sales associate
if it be proven that (a) substantially all of the remuneration (whether
or not paid in cash) for the services performed by such broker or sales
associate is directly related to sales or other output (including the
performance of services) rather than to the number of hours worked; (b)
the services performed by the broker or sales associate are performed
pursuant to a written contract executed between such broker or sales as-
sociate and the person for whom the services are performed within the
past twelve to fifteen months; and (c) the written contract provided for
in paragraph (b) herein was not executed under duress and contains the
following provisions:
   (i) that the broker or sales associate is engaged as an independent
contractor associated with the person for whom services are performed
pursuant to article twelve-A of the real property law and shall be
treated as such for all purposes, including but not limited to federal
and state taxation, withholding, unemployment insurance and workers'
compensation;
   (ii) that the broker or sales associate (A) shall be paid a commission
on his or her gross sales, if any, without deduction for taxes, which

commission shall be directly related to sales or other output; (B) shall not receive any remuneration related to the number of hours worked; and (C) shall not be treated as an employee with respect to such services for federal and state tax purposes;

(iii) that the broker or sales associate shall be permitted to work any hours he or she chooses;

(iv) that the broker or sales associate shall be permitted to work out of his or her own home or the office of the person for whom services are performed;

(v) that the broker or sales associate shall be free to engage in outside employment;

(vi) that the person for whom the services are performed may provide office facilities and supplies for the use of the broker or sales associate, but the broker or sales associate shall otherwise bear his or her own expenses, including but not limited to automobile, travel, and entertainment expenses;

(vii) that the person for whom the services are performed and the broker or sales associate shall comply with the requirements of article twelve-A of the real property law and the regulations pertaining thereto, but such compliance shall not affect the broker or sales associate's status as an independent contractor nor should it be construed as an indication that the broker or sales associate is an employee of the person for whom the services are performed for any purpose whatsoever;

(viii) that the contract and the association created thereby may be terminated by either party thereto at any time upon notice given to the other.

§ 3. Subdivision three of section two of the workers' compensation law, as amended by chapter forty-nine of the laws of nineteen hundred seventy-three, is amended to read as follows:

3. "Employer," except when otherwise expressly stated, means a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation, having one or more persons in employment, including the state, a municipal corporation, fire district or other political subdivision of the state, and every authority or commission heretofore or hereafter continued or created by the public authorities law. For the purposes of this chapter only "employer" shall also mean a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation who delivers or causes to be delivered newspapers or periodicals for delivering or selling and delivering by a newspaper carrier under the age of eighteen years as defined in section thirty-two hundred twenty-eight of the education law. For the purpose of this chapter only, "employer" shall also mean a person, partnership, association, or corporation who leases or otherwise contracts with an operator or lessee for the purpose of driving, operating or leasing a taxicab as so defined in section one hundred forty-eight-a of the vehicle and traffic law, except where such person is an owner-operator of such taxicab who personally regularly operates such vehicle an average of forty or more hours per week and leases such taxicab for some portion of the remaining time. For the purposes of this section only, such an owner-operator shall be deemed to be an employer

if he controls, directs, supervises, or has the power to hire or termi-
nate such other person who leases the vehicle.

§ 4. Subdivision four of section two of such law, as amended by chap-
ter eight hundred fifty-eight of the laws of nineteen hundred eighty-
five, is amended to read as follows:

4. "Employee" means a person engaged in one of the occupations enumer-
ated in section three or who is in the service of an employer whose
principal business is that of carrying on or conducting a hazardous em-
ployment upon the premises or at the plant, or in the course of his em-
ployment away from the plant of his employer; "employee" shall also mean
for the purposes of this chapter civil defense volunteers who are per-
sonnel of volunteer agencies sponsored or authorized by a local office
under regulations of the civil defense commission, to the extent of the
provisions of groups seventeen and nineteen; and for the purposes of
this chapter only a newspaper carrier under the age of eighteen years as
defined in section thirty-two hundred twenty-eight of the education law,
and shall not include domestic servants except as provided in section
three of this chapter, and except where the employer has elected to
bring such employees under the law by securing compensation in accord-
ance with the terms of section fifty of this chapter. The term
"employee" shall not include persons who are members of a supervised
amateur athletic activity operated on a non-profit basis, provided that
said members are not also otherwise engaged or employed by any person,
firm or corporation participating in said athletic activity, nor shall
it include the spouse or minor child of an employer who is a farmer un-
less the services of such spouse or minor child shall be engaged by said
employer under an express contract of hire nor shall it include an exe-
cutive officer of a corporation who at all times during the period in-
volved owns all of the issued and outstanding stock of the corporation
and holds all of the offices pursuant to paragraph (e) of section seven
hundred fifteen of the business corporation law except as provided in
subdivision six of section fifty-four of this chapter, nor shall it in-
clude a self-employed person or a partner of a partnership as defined in
section ten of the partnership law who is not covered under a compensa-
tion insurance contract or a certificate of self-insurance as provided
in subdivision eight of section fifty-four of this chapter, nor shall it
include farm laborers except as provided in group fourteen-b of section
three of this chapter. If a farm labor contractor recruits or supplies
farm laborers for work on a farm, such farm laborers shall for the pur-
poses of this chapter be deemed to be employees of the owner or lessee
of such farm. The term "employee" shall not include baby sitters as
defined in subdivision three of section one hundred thirty-one and sub-
division three of section one hundred thirty-two of the labor law or
minors fourteen years of age or over engaged in casual employment con-
sisting of yard work and household chores in and about a one family
owner-occupied residence or the premises of a non-profit, non-commercial
organization, not involving the use of power-driven machinery. The term
"employee" shall not include persons engaged by the owner in casual em-
ployment consisting of yard work, household chores and making repairs to
or painting in and about a one-family owner-occupied residence. The term
"employee" shall not include the services of a licensed real estate
broker or sales associate if it be proven that (a) substantially all of
the remuneration (whether or not paid in cash) for the services per-
formed by such broker or sales associate is directly related to sales or

000015

other output (including the performance of services) rather than to the number of hours worked; (b) the services performed by the broker or sales associate are performed pursuant to a written contract executed between such broker or sales associate and the person for whom the services are performed within the past twelve to fifteen months; and (c) the written contract provided for in paragraph (b) herein was not executed under duress and contains the following provisions:

(i) that the broker or sales associate is engaged as an independent contractor associated with the person for whom services are performed pursuant to article twelve-A of the real property law and shall be treated as such for all purposes, including but not limited to federal and state taxation, withholding, unemployment insurance and workers' compensation;

(ii) that the broker or sales associate (A) shall be paid a commission on his or her gross sales, if any, without deduction for taxes, which commission shall be directly related to sales or other output; (B) shall not receive any remuneration related to the number of hours worked; and (C) shall not be treated as an employee with respect to such services for federal and state tax purposes;

(iii) that the broker or sales associate shall be permitted to work any hours he or she chooses;

(iv) that the broker or sales associate shall be permitted to work out of his or her own home or the office of the person for whom services are performed;

(v) that the broker or sales associate shall be free to engage in outside employment;

(vi) that the person for whom the services are performed may provide office facilities and supplies for the use of the broker or sales associate, but the broker or sales associate shall otherwise bear his or her own expenses, including but not limited to automobile, travel, and entertainment expenses;

(vii) that the person for whom the services are performed and the broker or sales associate shall comply with the requirements of article twelve-A of the real property law and the regulations pertaining thereto, but such compliance shall not affect the broker or sales associate's status as an independent contractor nor should it be construed as an indication that the broker or sales associate is an employee of the person for whom the services are performed for any purpose whatsoever;

(viii) that the contract and the association created thereby may be terminated by either party thereto at any time upon notice given to the other.

"Employee" shall also mean, for purposes of this chapter, an infant rendering services for the public good as prescribed in sections seven hundred fifty-eight-a and 353.6 of the family court act.

For the purpose of this chapter only, "employee" shall also mean a driver, operator or lessee who contracts with an owner, operator or lessor for the purpose of operating a taxicab as so defined in section one hundred forty-eight-a of the vehicle and traffic law, except where such person leases the taxicab from a person who personally, regularly operates such vehicle an average of forty or more hours per week. For the purposes of this section only, such person shall be deemed to be an employee of the owner-operator if the owner-operator controls, directs, supervises, or has the power to hire or terminate such person.

"Employee" shall also mean, for purposes of this chapter, a professional musician or a person otherwise engaged in the performing arts who performs services as such for a television or radio station or network, a film production, a theatre, hotel, restaurant, night club or similar establishment unless, by written contract, such musician or person is stipulated to be an employee of another employer covered by this chapter. "Engaged in the performing arts" shall mean performing service in connection with the production of or performance in any artistic endeavor which requires artistic or technical skill or expertise.

§ 5. Subdivision five of section two of such law, as amended by chapter forty-nine of the laws of nineteen hundred seventy-three, is amended to read as follows:

5. "Employment" includes employment in a trade, business or occupation carried on by the employer for pecuniary gain, or in connection therewith, except where the employer elects to bring his employees within the provisions of this chapter as provided in section three, and except employment as a domestic worker as provided in section three, and except where a town elects to have the provisions of this chapter apply to the town superintendent of highways. "Employment" shall also include, in connection with the civil defense effort and for purposes of this chapter the service of a civil defense volunteer in authorized activities of a volunteer agency sponsored or authorized by a local office as defined in a state defense emergency act. The service of a civil defense volunteer who is also an employee recompensed by an employer for service to such employer, shall not be deemed to be in employment of a local office when he is performing civil defense service in his employment or in relation thereto. For the purposes of this chapter only "employment" shall also include the delivery or sale and delivery of newspapers or periodicals by a newspaper carrier as defined in section thirty-two hundred twenty-eight of the education law. The term "employment" shall not include the services of a licensed real estate broker or sales associate if it be proven that (a) substantially all of the remuneration (whether or not paid in cash) for the services performed by such broker or sales associate is directly related to sales or other output (including the performance of services) rather than to the number of hours worked; (b) the services performed by the broker or sales associate are performed pursuant to a written contract executed between such broker or sales associate and the person for whom the services are performed within the past twelve to fifteen months; and (c) the written contract provided for in paragraph (b) herein was not executed under duress and contains the following provisions:

(i) that the broker or sales associate is engaged as an independent contractor associated with the person for whom services are performed pursuant to article twelve-A of the real property law and shall be treated as such for all purposes, including but not limited to federal and state taxation, withholding, unemployment insurance and workers' compensation;

(ii) that the broker or sales associate (A) shall be paid a commission on his or her gross sales, if any, without deduction for taxes, which commission shall be directly related to sales or other output; (B) shall not receive any remuneration related to the number of hours worked; and (C) shall not be treated as an employee with respect to such services for federal and state tax purposes;

000017

(iii) that the broker or sales associate shall be permitted to work any hours he or she chooses;

(iv) that the broker or sales associate shall be permitted to work out of his or her own home or the office of the person for whom services are performed;

(v) that the broker or sales associate shall be free to engage in out-side employment;

(vi) that the person for whom the services are performed may provide office facilities and supplies for the use of the broker or sales associate, but the broker or sales associate shall otherwise bear his or her own expenses, including but not limited to automobile, travel, and entertainment expenses;

(vii) that the person for whom the services are performed and the broker or sales associate shall comply with the requirements of article twelve-A of the real property law and the regulations pertaining thereto, but such compliance shall not affect the broker or sales associate's status as an independent contractor nor should it be construed as an indication that the broker or sales associate is an employee of the person for whom the services are performed for any purpose whatsoever;

(viii) that the contract and the association created thereby may be terminated by either party thereto at any time upon notice given to the other.

For the purpose of this chapter only, "employment" shall also include the service of a driver, operator or lessee of a taxicab as so defined in section one hundred forty-eight-a of the vehicle and traffic law, except where a person leases a taxicab from an owner-operator of a taxicab who, regularly operates the vehicle an average of forty or more hours per week. Such a lessee shall be deemed to be in employment if the lessor controls, directs, supervises, or has the power to hire or terminate the lessee.

§ 6. Subdivision five of section two hundred one of such law is amended by adding a new undesignated paragraph to read as follows:

"Employee" shall also mean, for purposes of this chapter, a professional musician or a person otherwise engaged in the performing arts who performs services as such for a television or radio station or network, a film production, a theatre, hotel, restaurant, night club or similar establishment unless, by written contract, such musician or person is stipulated to be an employee of another employer covered by this chapter. "Engaged in the performing arts" shall mean performing service in connection with the production of or performance in any artistic endeavor which requires artistic or technical skill or expertise.

§ 7. Paragraph A of subdivision six of section two hundred one of such law, as amended by chapter one hundred nineteen of the laws of nineteen hundred sixty-nine, is amended to read as follows:

A. "Employment" means employment in any trade, business or occupation carried on by an employer, except that the following shall not be deemed employment under this article: services performed for the state, a municipal corporation, local governmental agency, other political subdivision or public authority; employment subject to the federal railroad unemployment insurance act; service performed on or as an officer or member of the crew of a vessel on the navigable water of the United States or outside the United States; service as farm laborers; casual employment and the first forty-five days of extra employment of em-

ployees not regularly in employment as otherwise defined herein; service as golf caddies; and service during all or any part of the school year or regular vacation periods as a part-time worker of any person actually in regular attendance during the day time as a student in an elementary or secondary school. The term "employment" shall not include the services of a licensed real estate broker or sales associate if it be proven that (a) substantially all of the remuneration (whether or not paid in cash) for the services performed by such broker or sales associate is directly related to sales or other output (including the performance of services) rather than to the number of hours worked; (b) the services performed by the broker or sales associate are performed pursuant to a written contract executed between such broker or sales associate and the person for whom the services are performed within the past twelve to fifteen months; and (c) the written contract provided for in paragraph (b) herein was not executed under duress and contains the following provisions:

(i) that the broker or sales associate is engaged as an independent contractor associated with the person for whom services are performed pursuant to article twelve-A of the real property law and shall be treated as such for all purposes, including but not limited to federal and state taxation, withholding, unemployment insurance and workers' compensation;

(ii) that the broker or sales associate (1) shall be paid a commission on his or her gross sales, if any, without deduction for taxes, which commission shall be directly related to sales or other output; (2) shall not receive any remuneration related to the number of hours worked; and (3) shall not be treated as an employee with respect to such services for federal and state tax purposes;

(iii) that the broker or sales associate shall be permitted to work any hours he or she chooses;

(iv) that the broker or sales associate shall be permitted to work out of his or her own home or the office of the person for whom services are performed;

(v) that the broker or sales associate shall be free to engage in outside employment;

(vi) that the person for whom the services are performed may provide office facilities and supplies for the use of the broker or sales associate, but the broker or sales associate shall otherwise bear his or her own expenses, including but not limited to automobile, travel, and entertainment expenses;

(vii) that the person for whom the services are performed and the broker or sales associate shall comply with the requirements of article twelve-A of the real property law and the regulations pertaining thereto, but such compliance shall not affect the broker or sales associate's status as an independent contractor nor should it be construed as an indication that the broker or sales associate is an employee of the person for whom the services are performed for any purpose whatsoever;

(viii) that the contract and the association created thereby may be terminated by either party thereto at any time upon notice given to the other.

§ 8. This act shall take effect on the sixtieth day after it shall have become a law.

Message sheet — Senate bill recalled from Assembly

 **In Senate** 

STATE OF NEW YORK
MAY 21 1986
IN SENATE

.....................May. 14...... 1986. .

The Senate bill No. ..5549-B............, entitled**

An act to amend the labor law and the workers' compensation law, in relation to musicians and artists, qualified real estate agents and coverage of owners and operators of taxicabs

was recalled from the Assembly by concurrent resolution and the vote upon the final passage of the same was reconsidered.

On motion of Mr    LACK............                    and by unanimous consent, the same was amended as follows: "

Said bill as amended becoming Senate Reprint No. .......5549-C.............., was reprinted, re-engrossed and, having been on the desks of the members in its final form at least three calendar legislative days, was passed and ordered sent to the Assembly for concurrence.

By order of the Senate,

█████  Secretary.

*Stephen F. Sloan*



STATE OF NEW YORK
DEPARTMENT OF STATE
ALBANY, N.Y. 12231

M E M O R A N D U M

GAIL S. SHAFFER
SECRETARY OF STATE

DATE: August 4, 1986

TO:      Hon. Evan A. Davis
         Counsel to the Governor

FROM:    Maureen F. Glasheen
         General Counsel

SUBJECT: S. 5549-C (Senators Lack, Flynn)
         Recommendation: <u>No Objection</u>


        You requested our comments and recommendation on the above-numbered bill.

        This bill would amend the Labor Law and the Workers' Compensation Law to establish criteria as to whether a real estate broker or salesperson is an employee or an independent contractor for purposes of coverage under unemployment insurance and workers' compensation. It draws upon 26 U.S.C.A. § 3508 which sets forth elements whereby a real estate agent shall not be considered an employee for purposes of income tax withholding.

        The Department of State licenses real estate brokers and salespersons and provides supervision of their activities under Article 12-A of the Real Property Law.

        Our interest in the relationship between a broker and a person is in assuring the broker provide supervision of his salespersons. Pursuant to Real Property Law § 441-(1)(d), regulation 19 NYCRR 175.21 requires that the broker provide "regular, frequent and consistent personal guidance, instruction, oversight and superintendence" of the salespersons associated with the real estate broker. This duty devolves upon the broker whether or not any other body of law may dominate the salesperson or "employee" of "independent contractor" for other purposes.

        This bill's provisions are not inconsistent with the requirements of supervision and the bill specifically provides for compliance with Article 12-A of the Real Property Law and regulations pertaining thereto.

        By memorandum of June 5, 1980, this Department recommended approval of 1980 S. 7554-B (L. 1980, c. 226) which bill amended Article 12-A of the Real Property Law to refer to salespersons as

000021

"associates" of real estate brokers rather than "employees," thus neutralizing the characterization of the relationship.

Because this bill does not affect the Department's administration of Article 12-A, but merely sets up standards for the determination of the salesperson-broker relationship for other purposes, this Department has no objection to the approval of this bill.

MFG/wly

000022

*Note*

STATE OF NEW YORK
DEPARTMENT OF STATE
270 BROADWAY
NEW YORK, N.Y.    JAN 10 1977

RECEIVED
BUFFALO OFFICE
JAN 3 1977
DEPARTMENT OF STATE

MARIO M. CUOMO
SECRETARY OF STATE

Numerous real estate brokers have asked the Department of State whether salesmen hired by brokers pursuant to Section 440 of the Real Property Law are also employees under Article 18 of the Labor Law, the Unemployment Insurance Law.    If salespersons hired by brokers are employees under the unemployment insurance act, the brokers will be required to make unemployment insurance contributions for their employees.

It is clear under the present law that the fact that a person is employed as a salesman for purposes of Article 12-A of the Real Property Law does not automatically make him an employee under the unemployment insurance law.    This was stated clearly by the Court of Appeals in In re Wilson Sullivan Co., 289 N.Y. 113, 44 N.E. 2d 389 (1942).    In that case the Court of Appeals, in reversing a finding of the Unemployment Insurance Appeal Board that the salesmen were employees, stated that the recognized common law relationship of independent contractor was not outlawed by the Real Property Law.   Wilson Sullivan is still the law today. See In re Charles E. Willis & Co., 37 A.D. 2d 869, 325 N.Y.S. 2d 109 (3rd Dept. 1971).

Since real estate salesmen are not automatically employees, each case must be considered on its own particular facts to determine whether a salesman is an employee or an independent contractor.   The ultimate issue in each case is the amount of control the employee has over the agent in respect of the manner in which the agent's work is done.   Matter of Morton, 284 N.Y. 167, 30 N.E. 2d 369 (1940).   The higher the degree of control reserved by an employer the more likely the agent will be deemed an employee.

Based on the issue of control, the courts have split in determining in individual cases whether real estate salesmen are employees or independent contractors.   In certain cases, the salesmen have been held to be independent contractors.   In re Wilson Sullivan Co., supra; Niven Realty v. Levine, 43 A.D. 2d 1002, 352 N.Y.S. 2d 270, (3rd Dept. 1974);   In re Charles E. Willis & Co., supra; while in other cases the salesmen have been held to be employees. First-Met Realty Corp. v. Levine, 50 A.D. 2d 637, 374 N.Y.S. 2d 766 (3rd Dept. 1975); Lansky v. LTA Realty Corp., 46 A.D. 2d 599, 365 N.Y.S. 2d 66 (3rd Dept. 1974); Claim of Lawrence, 46 A.D. 2d 953, 362 N.Y.S. 2d 577, (3rd Dept. 1972); In the Matter of Migatz; 40 A.D. 2d 902, 337 N.Y.S. 2d ___, In the Matter of the Liability of Inter City Associates Inc., 284 App. Div. 673,134 N.Y.S. 2d 427 (3rd Dept. 1954).

As a general rule, if an employing broker wants his salesmen to be deemed independent contractors, he should adhere closely to the fact pattern of In re Wilson Sullivan Co.   In the Wilson Sullivan case, the broker supplied his salesmen with office and desk space, stationery, and telephone service.

000023

Leads were furnished the salesmen by direction of the broker's sales Manager. The salesmen had no specific calls during the day. The salesmen were not required to make any specific calls during the day. The salesmen were not required to make any specific location and they could engage in were not forced to operate in any specific location and they could engage in other occupations at the same time. Based on this set of facts, the courts have held authoritatively that the salesmen are independent contractors and not employees.

Where, however, the broker retains additional controls over his salesmen, courts have found that an employer-employee relationship is present. The following factors have been used by the courts to aid in a finding that an employer-employee relationship exists: (1) required attendance by the salesman at the broker's place of business (Inter City Associates, Migatz, Lawrence, First-Met); (2) the receipt by salesmen of advances or an ability to draw on commissions (Migatz); (3) specific limitations on the area in which a salesman can operate (Lawrence); (4) anti-future competition restrictions in an employee's contract (Lansky, First-Met); (5) a contract which limits the representation, or presentations that a salesman can make to those contained in the written material of the employer (Lansky); and (6) a requirement prohibiting salesmen from soliciting customers secured by the salesmen for any purpose other than the sale of property for the broker (Lansky).

Other factors besides those mentioned in Wilson Sullivan which appear useful in helping a broker establish an independent contractor relationship include (1) the payment of gas travel, and entertainment expenses by the salesmen (dissenting opinion Migatz), (2) the absence of a requirement that the salesmen meet certain substantive quotas or file written reports (dissenting opinion Migatz); (3) the fact that the salesmen schedule work to suit their convenience (Wills); (4) the ability of salesmen to work out of their homes (Niven Realty); (5) the absence of any requirement that salesmen attend sales meetings (Niven Realty); (6) the ability of salesmen to determine their own vacation time, (Niven Realty); and (7) the absence of a requirement that salesmen must follow up leads (Niven Realty).

If the broker follows the facts of In re Wilson Sullivan Co., as outlined in this memorandum, and avoid the factors described above, a court should hold that his salesmen are independent contractors and not employees.

_____

Secretary of State

DATED: November 23, 1976

000024

Prospective
Prospective leads were furnished the salesman by the salesman. The salesman had no specific hours, no definite routine to follow. The salesman was not required to make any specific calls during the day. The salesman and were not required to operate in any specific location and they could engage in other occupations at the same time. Based on this set of facts, the courts have held authoritatively that the salesmen are independent contractors and not employees.

Where, however, the broker retains additional controls over his salesman, courts have found that an employer-employee relationship is present. The following factors have been used by the courts to aid in a finding that an employer-employee relationship exists: (1) required attendance by the salesman at the broker's place of business (Inter City Associates, Migatz, Lawrence, First-Nat); (2) the receipt by salesman of advances or an ability to draw on commissions (Migatz); (3) specific limitations on the area in which a salesman can operate (Lawrence); (4) anti-future competition restrictions in an employee's contract (Lansky, First-Nat); (5) a contract which limits the representation, or presentations that a salesman can make to those contained in the written material of the employer (Lansky); and (6) a requirement prohibiting salesmen from soliciting customers secured by the salesman for any purpose other than the sale of property for the broker (Lansky).

Other factors besides those mentioned in Wilson Sullivan which appear useful in helping a broker establish an independent contractor relationship include (1) the payment of gas travel, and entertainment expenses by the salesman (dissenting opinion Migatz), (2) the absence of a requirement that the salesmen meet certain substantive quotas or file written reports (dissenting opinion Migatz); (3) the fact that the salesmen schedule work to suit their convenience (Wills); (4) the absence of any requirement that salesmen attend sales meetings (Niven Realty); (5) the ability of salesmen to work out of their homes (Niven Realty); (6) the ability of salesmen to determine their own vacation time, (Niven Realty); and (7) the absence of a requirement that salesmen must follow up leads (Niven Realty).

If the broker follows the facts of In re Wilson Sullivan Co., as outlined in this memorandum, and avoid the factors described above, a court should hold that his salesmen are independent contractors and not employees.

Secretary of State

DATED: November 23, 1976

000025



**STATE OF NEW YORK**
**WORKERS' COMPENSATION BOARD**
180 LIVINGSTON STREET
BROOKLYN, NY 11248

ROBERT STEINGUT
CHAIRMAN

(718) 802-6671

GLADYS CARRION
GENERAL COUNSEL

October 8, 1986

Honorable Evan Davis
Counsel to the Governor
New York State Executive Chamber
The State Capitol
Albany, New York  12247

Re: S5549C Lack, A1596A Robach,
Barbaro

Dear Mr. Davis:

We are in receipt of your request for our analysis, comments and recommendations regarding the legislation noted above. We appreciate the opportunity to present our position on this bill and wish to advise you that we have no objection to it.

The benefits the bill confers on taxi drivers and musicians outweighs the detriment that may accrue to real estate salespeople and brokers. This legislation amends the Workers' Compensation Law to include driver/operator/lessors of taxicabs as employees except in one instance where such person leases the cab from a person who regularly operates the cab an average of 40 or more hours per week. Coverage would have to be provided by the lessor of the cab, who would be deemed to be the employer.

This bill addresses a serious problem in the workers' compensation system. There have been a number of cases involving leased cabs in which the issue of coverage has been strenuously litigated. Although an employment relationship has generally been found, there has been great resistance by lessors of cabs to provide coverage. When coverage has been provided there have been attempts to make the lessee/employee pay for the coverage which is illegal under §31 of the Workers Compensation Law. Because of the severity of the problem we are in favor of legislation that would specifically provide coverage.

October 8, 1986
Page Two

Honorable Evan Davis
Counsel to the Governor


There is less of a problem with regard to the coverage of musicians or other performing artists. This legislation specifically grants coverage to all such persons and assists in addressing the related problem of identifying who is the employer if a band or other group of performers is involved.

We had reservations about the exclusion of certain real estate sales persons and brokers. The exclusions in this bill because of its contractual requirements will apply to very few real estate sales people and brokers as a great majority will be excluded.

On balance the cause of workers compensation coverage is better served by this legislation.

In view of these points we wish to advise that we have no objection to this legislation.

Sincerely,

Gladys Carrion
General Counsel


GC:mck

S5549-C

*b7

STATE OF NEW YORK
**GOVERNOR'S OFFICE OF EMPLOYEE RELATIONS**
AGENCY BUILDING NO. 2
ALBANY, NEW YORK 12223

THOMAS F. HARTNETT
DIRECTOR

NANCY L. HODES
EXECUTIVE DEPUTY DIRECTOR
JOSEPH M. BRESS
GENERAL COUNSEL

### MEMORANDUM

July 30, 1986

TO:      Hon. Evan A. Davis

FROM:    Joseph M. Bress

RE:      S.5549-C

The above-referenced bill would amend the Labor Law and the Workers' Compensation Law in relation to the definition of employee, employer and employment with respect to musicians, artists, owners and operations of taxi cabs, real estate agents and real estate sales associates.

This bill would amend section 511 of the Labor Law and section 2 of the Workers' Compensation Law to include in the definition of "employee" a professional musician or person engaged in the performing arts, who performs services as such for a television, radio station or network, a film production, theatre, hotel, restaurant, night club or similar establishment unless, by written contract, such musician or person is stipulated to be an employee of another employer covered under the Workers' Compensation Law.

This bill would also amend section 511 of the Labor Law and section 2 of the Workers' Compensation Law to provide that the term "employment" and "employee" shall not include the services of a licensed real estate broker or sales associate if, pursuant to the criterion outlined in the legislation, it can be proven that the real estate broker or sales associate is an independent contractor pursuant to Article 12-a of the Real Property Law and is also treated as such, for all purposes, including but not limited to federal and state taxation withholding, unemployment insurance and workers' compensation.

This bill would also amend section 2 of the Workers' Compensation Law to amend the definition of "employer" and "employee" with respect to taxi cab lessors and lessees.  An employee shall include a driver, operator or lessee who contracts with an owner, operator or lessor for the

000028

purpose of operating a taxi cab as so defined in section 148-a of the Vehicle and Traffic Law, except where the taxi cab is leased from a person who personally and regularly operates such taxicab for an average of forty or more hours per week. The individual is an employee of the owner-operator if the owner-operator controls, directs, supervises or has the power to hire or terminate such person. "Employer", pursuant to this legislation, would be amended to include the absolute converse of the above definition.

It is the intent of this legislation to specifically include professional musicians and performing artists in the Workers' Compensation Law and Labor Law, thereby making them eligible for workers' compensation and unemployment insurance benefits and, for the purpose of workers' compensation coverage, include taxi cab owners who lease their cabs. It is also the intent of this legislation to exempt real estate brokers and real estate sales associates, who can be defined as independent contractors, from the class of persons eligible for unemployment insurance and workers' compensation benefits.

With respect to real estate brokers and qualified sales associates, this legislation would provide a clear and consistent criteria for determining when real estate brokers and qualified sales associates shall be considered independent contractors.

This legislation would eliminate any ambiguities with respect to the employment status of musicians, performing artists, taxi cab drivers and real estate brokers, subject to the established criteria, thus administrative litigation should be reduced.

Therefore, the Governor's Office of Employee Relations has no objection to this legislation.





STATE OF NEW YORK
DEPARTMENT OF LAW
TWO WORLD TRADE CENTER
NEW YORK, N.Y. 10047

ROBERT ABRAMS
ATTORNEY GENERAL

MEMORANDUM FOR THE GOVERNOR


Re:  <u>Senate 5549--C</u>


I have reviewed the above-captioned bill and find no legal
objection thereto.


Dated:  June 26, 1986


Respectfully submitted,

ROBERT ABRAMS
Attorney General

S.5549—

# STATE OF NEW YORK
## DEPARTMENT OF LABOR

STATE OFFICE BUILDING CAMPUS
ALBANY, NEW YORK 12240

Counsel's Office
(518) 457-4380

June 26, 1986

Honorable Evan Davis
Counsel to the Governor
Executive Chambers
The Capitol
Albany, New York 12208

                    Re: S.5549-C: AN ACT to amend the
                    labor law and the workers'
                    compensation law, in relation to
                    musicians and artists, qualified
                    real estate agents and coverage
                    of owners and operators of
                    taxicabs

Dear Mr. Davis:

     The Department of Labor has no objection to the
above-referenced bill which, in part, amends the labor law
to add certain musicians or persons engaged in the
performing arts to the list of employees covered by
unemployment insurance and therefore eligible to receive
benefits.

     The bill also amends the labor law by setting
forth certain criteria under which persons employed as
licensed real estate brokers or sales associates will be
excluded from coverage.  It has been the policy and practice
of the Department to consider these factors for some time
before making a determination that an individual is not an
employee within the meaning of the unemployment insurance
law.  This bill merely incorporates those factors into the
statute.

                         Sincerely,

                         Barbara Deinhardt

                         Barbara C. Deinhardt
                         Deputy Commissioner of Labor
                         for Legal Affairs

BCD:rjt

LH 1 (6-85)

000031



**ROBERT STEINGUT**
**CHAIRMAN**

STATE OF NEW YORK
**WORKERS' COMPENSATION BOARD**
180 LIVINGSTON STREET
BROOKLYN, NY 11248

(718) 802-6671

**GLADYS CARRION**
**GENERAL COUNSEL**

July 30, 1986

Honorable Evan Davis
Counsel to the Governor
New York State Executive Chamber
The State Capitol
Albany, New York   12247

Re:  S5549C Lack, A1596A Robach,
Barbaro

Dear Mr. Davis:

We are in receipt of your request for our analysis, comments and recommendations regarding the legislation noted above. We appreciate the opportunity to present our position on this bill and wish to advise you that we have no objection to it.

The benefits the bill confers on taxi drivers and musicians outweighs the detriment that may accrue to real estate sales-people and brokers. This legislation amends the Workers' Compensation Law to include driver/opertor/lessors of taxicabs as employees except in one instance where such person leases the cab from a person who regularly operates the cab an average of 40 or more hours per week. Coverage would have to be provided by the lessor of the cab, who would be deemed to be the employer.

This bill addresses a serious problem in the workers compensation system. There have been a number of cases involving leased cabs in which the issue of coverage has been strenuously litigated. Although an employment relationship has generally bee found, there has been great resistance by lessors of cabs to provide coverage. When coverage has been provided there have been attempts to make the lessee/employee pay for the coverage which is illegal under §31 of the Workers Compensation Law. Because of the severity of the problem we are in favor of legislation that would specifically provide coverage.

July 30, 1986
Page Two

Honorable Evan Davis
Counsel to the Governor

There is less of a problem with regard to the coverage of musicians or other performing artists. This legislation specifically grants coverage to all such persons and assists in addressing the related problem of identifying who is the employer if a band or other group of performers is involved.

We had reservations about the exclusion of certain real estate sales persons and brokers. The exclusions in this bill because of its contractual requirements will apply to very few real estate sales people and brokers as a great majority will be excluded.

On balance the cause of workers compensation coverage is better served by this legislation.

In view of these points we wish to advise that we have no objection to this legislation.

Sincerely,

Gladys Carrion
General Counsel

GC:mck

000033





5519

MEMORANDUM

Senate Bill

Assembly Bill

Introduced by Senator James J. Lack

Introduced by Assy. Roger J. Robach

AN ACT to amend the labor law and workers'
compensation in relation to qualified real
estate agents

PURPOSE:

To clarify that real estate brokers and salespeople who qualify as independent
contractors pursuant to the Internal Revenue Code are exempt from the class of
workers for whom unemployment insurance and workers' compensation are mandated.

SUMMARY OF PROVISIONS:

This bill would amend Section 522 of the Labor Law to exclude real estate agents
pursuant to Section 3805 of the Internal Revenue Code from the definition of
"employment" therein.

This bill would also amend subdivisions four and five of Section 2 and Section 201
of the Workers' Compensation Law to exclude this same category of individual from
the definitions of employee and employment.

JUSTIFICATION:

This legislation would clarify existing case law as it pertains to independent
contractors in the real estate business by exempting them from withholding re-
quirements.

Whether real estate brokers and salespeople are independent contractors has been
the subject of substantial litigation through the years. Most recently in the
Matter of 12 Cornelian Street vs. Phillip Ross as Industrial Commissioner, de-
cided June 15, 1982, the Court of Appeals affirmed the recognition that in many
instances real estate salesmen are independent contractors and therefore when
serving as such are not entitled to unemployment insurance coverage. Likewise,
on the Federal level, Congress also recognized that real estate agents in many
instances work as independent contractors and therefore provide an exemption
from income tax withholding requirements for qualified agents who meet the test
set forth in Section 3805 of the IRC.

This legislation would use the Internal Revenue Code exemption from withholding
to likewise exempt real estate brokers and salespeople who qualify therefore,
from the class of individuals for whom workers' compensation and unemployment
insurance coverage must be provided. In doing so, it sets forth a clear cut
criteria under which the question of whether an individual is an independent
contractor in the real estate business can be determined.

By introducing this needed element of consistancy, it would benefit all involved
since the issues of status and required insurance would be clearly decided by
application of the simple test it sets forth.

FISCAL IMPLICATIONS:

None

EFFECTIVE DATE:

000034



S- 5549-C

**THE CITY OF NEW YORK**
**OFFICE OF THE MAYOR**

111 Washington Avenue
Albany New York 12210
(518) 462-5611

52 Chambers Street
New York, New York 10007
(212) 566-5135

JAMES BRENNER
LEGISLATIVE REPRESENTATIVE

June 30, 1986

## M E M O R A N D U M

TO:     Honorable Evan Davis
        Counsel to the Governor

FROM:   James Brenner

RE:     Senate Bill No. 5549-C - by Sens. Lack, Flynn

        AN ACT to amend the labor law and the workers'
        compensation law, in relation to musicians
        and artists, qualified real estate agents and
        coverage of owners and operators of taxicabs

        You have requested the comments and recommendation
of the Mayor concerning the above bill which is before the
Governor for executive action.

        Please be advised that the Mayor has no recommendation
with respect to this legislation.

n/r

000035



AG    86. 08/01  14:24    P02  *

**FIELDMAN & SLATER**
ATTORNEYS AT LAW
SUITE 2708
10 EAST 40TH STREET
NEW YORK, NEW YORK 10016

GALE FIELDMAN
JAMES R. SLATER

212-684-6651

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Room 207
State Capital
Albany, New York 12224

            Re:  Senate Bill 5549-C

Dear Mr. Davis:

        In furtherance of our telegram of last evening we wish
to expand upon the opposition voiced by our client, Van Dam Auto
Services, Inc., to the above referenced bill.

        By legislative action, the referenced bill has created
an employer/employee relationship which flies in the face of
common sense and existing case law created by the Courts of
State.  Its application to the leasing of taxicabs, and p
by inference, the leasing of taxi cab medallions, ignores
operation of an industry which does nothing more than le
means of production to an individual seeking to be an ind
entrepreneur.

        The very context of the bill creates an inconsistency i.
its various sections.  It creates an employer/employee
relationship where none can be factually found.  It ignores any
ti·ditional indicia of employment.  In examining the faults of
the proposed bill we must first acknowledge the common law
distinctions between an employer/employee relationship and one of
independent contracting.  Litts v. Risley Lumber Co., 224 N.Y.
321, 120 N.E. 730 (1918); Duffy v. Kedenburg, 278 A.D. 31, 103
N.Y.S.2d 457 (3d Dept. 1951); See, Matter of Toomey v. New York
State Legislature, 2 N.Y.S.2d 446, 141 N.E.2d 584, 161 N.Y.S.2d
81 (1957); See also, Manning v. Whalen, 259 A.D. 490, 492,
20 N.Y.S.2d 364, 367 (3rd Dept. 1940); Commissioners Of the State
Insurance Fund v. Kaplan, 89 Misc.2d 610, 392 N.Y.S.2d at 974
(Civ.Ct., N.Y.Cty., 1977).

        If the lessees are deemed independent contractors rather
than "employees", the purported employer has no obligation to
provide them with insurance coverage.  Manning v. Whalen, 259
A.D. at 492, 20 N.Y.S.2d at 367.  Under the proper factual
context a lessor/lessee arrangement is not tantamount to an

000036

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Seven

right of control over the lessees or create any dependency upon
Van Dam for work.

Matter of Wittenstein v. Fugazy Corp. further elaborates
the elements necessary to demonstrate the existence of an
employer/employee relationship. 59 A.D.2d 249, 399 N.Y.S.3d
314. This case involved franchisees seeking compensation
coverage from Respondent, Fugazy Corp. Id. The court found that
Respondent directly benefitted from claimant's work. Id. In
addition the "franchisees were to conduct their operations in a
manner benefitting a luxury vehicle service and reflecting credit
on the good will of Fugazy." Id. at 250, Id. at 315-316.
Respondent also had the power to terminate their working
relationship with the claimants. Id. Therefore, the court held
that on the basis of both the "control" and "relative nature of
the work" tests the Board's finding that Respondent was the
"employer" of the claimants warranted affirmance. Id. at 250-
251, Id. at 316.

Once again, the court applied the controlling
principles concerning the existence of an employer/employee
relationship to a factual context quite dissimilar from the case
at hand. Van Dam does not direct the business activities of the
lessees and it does not engage in the car service business as do
the lessees. Therefore, Van Dam's relationship with the lessees
does not reflect the requisite elements of control nor
demonstrate a sufficient nexus between the nature of the business
conducted by Van Dam and the lessees to support a finding of an
employer/employee relationship.

In Manning v. Whalen, the court applied traditional
common law principles to define an "employee" within the meaning
of the WCL. 259 A.D. 490, 20 N.Y.S.2d 364. The court held that
a lessor of a saw mill was not the employer of the lessee or its
employees on the ground that the lessees were independent
contractors. Id. In support of their holding, the court stated
that "both...Whalen [the lessor] and the lessees from the time of
the [contract's] inception to the death of the decedent...the

× 80d  Ϥᄅ:Ϥㄥ Ⅰϴ/8ϴ '9ϐ ×

000037

86. 08/01 14:24  P03 *

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Two

employer/employee relationship, and thus, the lessees are
presently not entitled to the statutory protections of the
Workers' Compensation Law ("WCL").  Id., Grant v. Frontier Oil
Refining Co., 20 A.D.2d 493, 247 N.Y.S.2d 731.  Nor should they
be so incorporated into such coverage.  Furthermore, an act of
hiring, express or implied, must be shown to warrant a finding of
an employer/employee relationship.  Skeels v. Paul Smith's Hotel
Co., 195 A.D. 39, 42, 185 N.Y.S. 665, 667-668 (3rd Dept. 1921);
See, Matter of Campbell Village v. Workmen's Compensation Board,
23 N.Y.2d 202, 206, 243 N.E.2d 739, 296 N.Y.S.2d 129, 132 (1968)
(in a case involving an alleged uninsured employer under the
Disability Benefits Law, the Court of Appeals held that a legal
contract of hire is a necessary element for a finding that an
"employer" must provide coverage pursuant to the Workmen's
Compensation Law).

     The mere existence of a lease structuring the business
relationship as lessor/lessee may not by itself preclude a
determination of an employer/employee relationship.  Matter of
Gregg v. Dallas & Mavis Forwarding Co., 32 A.D.2d 678, 299
N.Y.S.2d 499 (3rd Dept. 1969); See, Commissioners Of the State
Insurance Fund v. Kaplan, 89 Misc.2d 610, 392 N.Y.S.2d at 975.
However, the specific indicia of such must be explicitly found.

     A determination of the employer/employee relationship
should be preced   y an examination of the surrounding
circumstances in     ffort to determine the presence of
sufficient contro  /er the lessee, among other factors, prior to
bringing the lessor within the statutory requirements of the
subject statute.  Commissioners Of the State Insurance Fund v.
Lindenhurst Green and White Corp., 101 A.D.2d 730, 731, 475
N.Y.S.2d 42, 43 (1st Dept. 1984).

     Our clients operate a car leasing service and do not
derive any income based upon the amount of fares earned by the
drivers, they do not have any pecuniary interest in the operation
of the cars.  The consideration for the lease arrangement is only

000038