FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Three

pre-set fixed payments to Van Dam and no wages are paid to the
lessees.

It has been held that "the nature of the relationship
should be the focus of in-depth inquiry when determining
[workers'] compensation coverage." Commissioners Of The State
Insurance Fund. v. Lindenhurst Green and White Corp., 101 A.D.2d
730, 731, 475 N.Y.S.2d at 42, 43. The question of the existence
of an employer/employee relationship for purposes of workers'
compensation coverage has often been resolved by reference to the
"control test" and/or the "relative nature of the work" test.
Id., e.g., Matter of Ziegler v. Fillmore Car Service, Inc., 83
A.D.2d 692, 693, 442 N.Y.S.2d 276, 278 (3rd Dept. 1981) (court
applied both tests); Matter of Pelow v. Sork, 39 A.D.2d 494, 496,
337 N.Y.S.2d 219, 220, aff'd, 33 N.Y.2d 946 (1974) (court applied
both tests); Matter of Wittenstein v. Fugazy Corp., 59 A.D.2d
249, 250, 399 N.Y.S.2d 314, 316 (3rd Dept. 1977) (court applied
both tests); Matter of King v. Kelley, 41 A.D.2d 798, 341
N.Y.S.2d 670, 672-673 (3rd Dept. 1973) (court applied control
test only); Matter of Rossman v. Imperial Fashions, Inc., 32
A.D.2d 1023, 1024, 301 N.Y.S.2d 751, 754 (3rd Dept. 1969) (court
applied both tests); Matter of Gregg v. Dallas & Mavis Forwarding
Co., 32 A.D.2d at 629, 299 N.Y.S.2d at 500 (court applied only
the control test); Hamilton v. M&M Leasing Co., 283 A.D. 904, 103
N.Y.S.2d 1, 2 (3rd Dept. 1954) (court applied control test only).

The "control test" involves the application of the
following four factors to the particular facts of each case;

> (1) The direct evidence of the owner's
> right to or exercise of control; (2) The
> method of payment; (3) The extent to
> which the owner furnishes equipment; and
> (4) Whether the owner retains the right
> to discharge.

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Four

Commissioner Of the State Insurance Fund v. Lindenhurst Green and
White Corp., 101 A.D.2d at 731, 475 N.Y.S. 2d at 43 (citing 1B
Larson on Workmen's Compensation, §44.00).

The "relative nature of the work" test applies the
following six factors to determine the existing relationship
between the parties:

> (1)  The character of the claimant's
> work; (2)  How much of a separate calling
> that work is from the owner's occupation;
> (3)  Whether it is continuous or
> intermittent; (4)  Whether it is expected
> to be permanent; (5)  Its importance to
> the owner's business; and (6)  Its
> character in relation to whether or not
> the claimant should be expected to carry
> his own accident insurance burden.

Id. at 731, Id. at 44.

Courts have consistently held that while no single
factor is conclusive, the determination of the relationship can
be grounded upon any one of the factors standing alone, or upon a
combination thereof. Matter of Hopkins v. Players Three, Inc.,
99 A.D.2d 912, 913, 472 N.Y.S.2d 519 (3rd Dept. 1954); See,
Matter of Ziegler, 83 A.D.2d at 693, 442 N.Y.S.2d at 278; See
also, Matter of Wittenstein, 59 A.D.2d at 250, 399 N.Y.S.2d at
316.

In Rossman v. Imperial Fashions, Inc., the court applied
both the control and the "relative nature of the work" tests in
holding that an employer/employee relationship did not exist
between the Claimant-Salesman and the Respondent-Madras, a fabric
importer. 32 A.D.2d 1023, 301 N.Y.S.2d 751. In examining the
circumstances of the case, the court found the following facts
obviated any indication that respondent had the right to control
the claimant. Id. No oral or written employment contract was offered
to prove the element of "control". Id. at 1024, Id. at 754.

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Six

Respondent directed the work activities of the driver.  Id.
Therefore, despite the terms of the lease the evidence of control
obviated a finding of a lessor/lessee relationship and supported
the Board's determination of the employer/employee
relationship.  Id.

       Although the lessor was responsible for compensation
coverage of the driver in the above case, the facts therein are
not analagous to the instant matter.  Van Dam does not direct the
work activities of the lessees nor does it carry them on its
payrolls, nor does it exercise any control over them.

       In a subsequent case involving a cab company leasing
space to independent cab owners, the Board's finding of an
employment relationship at the time of the accident was affirmed
by the court.  Matter of King v. Kelley, 41 A.D.2d 798, 341
N.Y.S.2d 670.  Claimant was a driver supplied by Respondent.
Id.  In holding that Respondent exercised sufficient control over
claimant "together with other elements of the relationship" to
demonstrate that Respondent was claimant's "employer", the court
stated:

              Star Cab Company controlled the
              activities and work of claimant; the
              business activity of Star Cab Company was
              directly benefitted by the work of
              claimant; claimant first reported to the
              company for employment and was referred
              to the Company's insurer; and claimant
              was required to return to base upon order
              of the Star Cab Company dispatcher.

Id., Id. at 672-673.  Again, the present matter is clearly
distinguishable from the preceding case.  Van Dam does not
directly benefit from the work of the lessees, nor does it
exercise any control over their business activity.  As lessor,
Van Dam's exclusive interest is that the lessees comply with the
terms of the lease.  Furthermore, the lease does not create any

86. 08/01 14:24 P06 *

**FIELDMAN & SLATER**

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Five

In addition, the Respondent did not supply claimant with any equipment nor did the payment of commissions directly to claimant evidence "control". Id. Furthermore, no evidence of Respondent's right to discharge claimant was presented to the court. Id.

The court held that under the "relative nature of the work" test, claimant's activities were not sufficiently related to Respondent's business to be deemed an "employee" of Respondent. Id. The court found in favor of Respondent even though the claimant had sold their product and received commissions from them. Rossman v. Imperial Fashions, Inc., 32 A.D.2d 1023, 30 N.Y.S.2d 751.

In a case decided in the same year, the court upheld the Board's finding of an employer/employee relationship between claimant and respondent lessee. Matter of Gregg v. Dallas & Mavis Forwarding Co., 32 A.D.2d 678, 299 N.Y.S.2d 499. The court held that in spite of a lease specifying that the lessor was an independent contractor, Respondent-lessee exerted sufficient control to support the Board's finding. Id. Further, claimant received his instructions directly from the lessee. Although the record provided evidence demonstrating an independent contractor relationship, the facts also indicated sufficient elements of control to support the Board's finding. Id. Therefore, a lessee of a tractor-trailer can be deemed an "employer" within the meaning of WCL when sufficient evidence of control over the lessor-driver is presented to the Board.

In an earlier case, the Respondent, a leasing company, was required to provide coverage for a decedent driver. Hamilton v. M&M Leasing Co., 283 A.D. 904, 103 N.Y.S.2d 1 (1954). The Board's finding of an employer/employee relationship was sustained by the court on the grounds that Respondent hired the driver, "was paid by them, and was carried on their payrolls exclusively; that...social security withholding and unemployment insurance taxes were deducted by them, and that they carried compensation insurance on their drivers." Id. at 2. Further,

86. 08/01 14:24  P09 *

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Eight

lessees operated the mill without [lessor's] interference or direction..." Id. at 492, Id. at 367.

Since Van Dam does not bind the lessees to regular hours of work nor pay them a salary and is not entitled to fire the lessees, it should not be required to carry insurance for them. See, Manning v. Whalen, 259 A.D. at 492, 20 N.Y.S.2d at 367.

Even where the alleged employer engages in a similar business to that of the claimant, courts have traditionally examined the elements of control to determine if an employment relationship actually exists. See, Ziegler v. Fillmore Car Service, Inc., 83 A.D.2d 642, 442 N.Y.S.2d 276. In Ziegler, the court affirmed the Board's decision that Fillmore Car Service, Inc., Respondent, was the employer of an independent cab driver. Id. Respondent indirectly benefitted from claimant's work since his general employer instructed claimant to receive fare assignments from Respondent's dispatcher. Id., Id. at 277. Claimant's car displayed Respondent's name and was subject to age requirements mandated by Respondent. Id. at 693, Id. at 277-278. The court held that Respondent's dispatcher virtually controlled the claimant and thus, constituted his "employer" for purposes of compensation coverage. Id., Id. at 278.

The above case is also distinguishable from Van Dam's situation because the lessees' activities and work are not conducted under the direction or supervision of Van Dam. Moreover, Van Dam does not directly or indirectly benefit from lessees' business because it does not provide a dispatch service for lessees and is not entitled to share in their earnings.

In another case involving a claimant's allegation that a lessor was the "employer" under the WCL, the court reversed the Board's finding of an "employment relationship". Grant v. Frontier Oil Refinery Co., 20 A.D.2d 493, 247 N.Y.S.2d 731. Respondent, Frontier Oil Refining Company, leased a service station to the employer of the claimants. Id. The court held that the record was "devoid of any evidence to sustain the

000043

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Nine

finding of the Board that [the lessee]...was the agent of
Frontier and that his employees, the claimants, were employees of
Frontier." Id. at 494, Id. at 732.

The court found that the written lease agreement
rebutted any indication of the right to or the exercise of
control over the claimants. Id. at 495, Id. at 733. In arriving
at their decision the court pointed out that the lessee was
required to tender only fixed monthly rent payments and that
along with having no authority to discharge lessee or his
employees, Frontier did not furnish the equipment used by the
claimants. Id. The court reversed the Board's decision on the
additional grounds that Respondent did not exert control over the
manner in which the business was operated. Id. at 494, Id. at
732. It is instructive to note that the court did not equate the
right to terminate the lease upon notice by either party with the
right to discharge lessee or his employees. 20 A.D.2d 731, 247
N.Y.S.2d 731.

Grant v. Frontier Oil Refining Co., 20 A.D.2d 493, 247
N.Y.S.2d 731, is arguably controlling in the instant matter. The
facts of that case are closely analogous to Van Dam's
situation. The other cases cited herein are illustrative of the
determination process involved in resolving the "employment
relationship" issue but they do not contain factual contexts
applicable to the instant matter.

Commissioners Of the State Insurance Fund v. Lindenhurst
Green and White Corp. also involved the issue of whether alleged
lessees were "employees" entitled to compensation coverage. 101
A.D.2d 730, 475 N.Y.S.2d 42. Respondent-taxi cab company
contended that the drivers were independent contractors leasing
its taxi cabs. Id.

The court denied Respondent's motion for summary
judgment and held that issues of fact must be resolved to
determine the nature of the relationship and remanded the case to
the trial court. Id. at 731, Id. at 44. While the court

**FIELDMAN & SLATER**

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Ten

recognized the importance of applying both the "control" and
"relative nature of the work" tests, it did not resolve the
"employment relationship" issue at that time.

Therefore, one would be expected to apply these tests to
determine the nature of the relationship existing between Van Dam
and its lessees.  Particular language from Commissioners Of the
State Insurance Fund v. Kaplan, will further aid in the
determination of this matter, where it stated:

> According to the leading treatise in the
> field[,] '[An] appropriate...subject for
> compensation protection...is [one who is]
> taking a regular and continuous part in
> the [business]; his work is hazardous;
> his rate of pay is such that he and his
> family cannot be expected to bear the
> cost of an industrial accident; and his
> place in the industrial process is not
> such that he could distribute the risk of
> injury through channels of his own.' 1A
> Larson, The Law of Workmen's
> Compensation, §§43.41, 43.42 (1973).

89 Misc.2d 610, 392 N.Y.S.2d at 974.  As already discussed in
detail, Van Dams' relationship with its lessees does not contain
any of the above indicia of an employer/employee relationship.

The relationship that exists between Van Dam and its
lessees does not confer upon the former any right of control, nor
has it exerted any control over the operation of the lessees'
business.  The lease agreement characterizes the rights and
liabilities of the lessees as parties to a lease contract and not
as "employees".

The lessees provide taxi service, while Van Dam only
operates a taxi leasing business.  Van Dam maintains no pecuniary
interest in the lessee's work.  Its primary concerns are the

000045

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Eleven

prompt lease payments and the lessees' compliance with the terms
of the agreement.  The duration of the relationship is governed
by contract.  The relationship that exists is that of
lessor/lessee and cannot be terminated at the will of either
party.

Van Dam does not treat the lessees as employees since it
does not pay the lessee a wage, does not require them to work
certain amount of hours, does not provide a dispatch service,
does not require the cars to bear its name, does not have any
authority to fire the lessees (it only has the contractual
authority to terminate the lease upon particular conditions), and
they do not furnish any equipment other than the cars or
medallions which are the subject matter of the lease.

Therefore, Van Dam does not exert sufficient control
over the lessees to constitute an "employer".

Moreover, applying the "relative nature of the work"
test to the instant factual context, similarly does not
characterize Van Dam as the "employer" of the lessee who operates
independently of Van Dam.  Further, Van Dam does not require the
lessees to tender a percentage of their profits as consideration
for the lease agreement.  Therefore, the facts demonstrate that
there lacks a sufficient nexus between Van Dam and the lessees to
support an employer/employee relationship.

Based on the foregoing presentation of case law
interpreting the circumstances giving rise to an
employer/employee relationship, we find that the referenced bill
arbitrarily creates a new employment relationship without any
factual basis.  As long as Van Dam's lease agreements do not
provide it with the right to control the work activities of the
lessees and also does not create a sufficient nexus between the
lessor's business and the lessees' business an independent
relationship exists between Van Dam and the lessees.

FIELDMAN & SLATER

August 1, 1986

Hon. Evan Davis
Counsel to the Governor
Page Twelve

Further support of Van Dam's position is found in the
fact that there is no proof of an informal or formal act of
hiring. The business of leasing taxis and the business of
providing taxi service are quite independent of each other.  The
former provides the latter with the principal asset of their
business but does not maintain any further connections
therewith. Without evidence of Van Dam's involvement
manner of the operation of the lessees' business, the
to demonstrate the existence of an employer/employee
is lacking.

The lessees are independent contractors in
. Dam's business and their existing relationship i
that of lessor/lessee. No employer/employee relations.  exis
and workers compensation coverage should not be provi  .

Very truly yours,

JAMES R. SLATER

 **AMERICAN INSURANCE ASSOCIATION**    85 John Street
New York, N. Y. 10038
(212) 669-0400

July 23, 1986

Elyse Grey
Assistant Counsel to the Governor
Executive Chamber
Room 214
The Capitol
Albany, NY    12224

Re:  Senate 5549-C

Dear Ms. Grey:

This bill would amend the Workers' Compensation Law with regard to the definitions of covered employment for several different kinds of workers.  Our Association represents 171 property and casualty insurers that account for over 40 percent of the workers' compensation premiums written in New York.  We are opposed to this bill because we consider several aspects to be defective and unworkable from a compensation insurance standpoint.

Sections 1 and 6 of the bill are aimed at defining covered employment with respect to musicians and other performing artists.  In enumerating the various kinds of places where such performance may occur, the bill concludes the list of such places with the phrase "or similar establishment."  At best, this phrase is vague and ambiguous and will lead to needless litigation.  At worst, this phrase may well be used to impose a workers' compensation burden on a class of "employers" who would never consider themselves required to purchase workers' compensation coverage.  We are sure, for example, that the local American Legion Post will not be thinking of a workers' compensation exposure when an accordion player is hired for a little Saturday night entertainment.

There is another ambiguity in the sections of the bill dealing with taxicab lessees.  Sections 3, 4 and 5 would include taxicab lessees as covered employees under the Workers' Compensation Law.  The purpose of this change is a good one, and we support the attempt to correct abuses in this type of employment.  But this new language includes an exemption for drivers who lease the taxi from an owner-operator who also operates the vehicle for 40 or more hours per week.  Whether or not this exemption is a good idea, at least up to this point, the statute is clear.  However, the language goes on to provide an exception to the exemption, which either nullifies the exemption or will

-2-

create a good deal of confusion and unnecessary litigation. An owner-operator otherwise exempt from the term "employer" is nevertheless deemed to be an employer if he "controls, directs, supervises, or has the power to hire or terminate" the taxicab lessee. Consider the person who owns and operates his own taxicab regularly for over 40 hours per week. He leases his cab to another driver who operates the cab for some portion of the remaining time each week. It is difficult to imagine an owner-operator under these circumstances who would not control, direct, supervise or have the power to terminate the arrangement with the other driver. In our view, either the exemption should be removed from this provision in its entirety or the exception to the exemption should be eliminated.

In addition to these relatively technical problems, we believe that a major portion of the bill is simply unworkable. Sections 2, 4, 5 and 7 of the bill would exclude from covered employment licensed real estate brokers and sales associates under certain specified conditions. The Workers' Compensation Board in interpreting employment for the purpose of workers' compensation coverage historically has taken an expanded view. Employers in fields like real estate where compensation is typically paid in the form of commissions have often tried to structure the contractual relationship so as to define the relationship of an independent contractor. Regardless of the terms of the contract, however, the Board generally finds coverage on the theory that the employer exercised supervision and control over the broker's activities thus creating an employment relationship. In our view, the Workers' Compensation Board will continue to find coverage under this theory notwithstanding this new statutory framework. But the enactment of this statute would give real estate firms a strong basis for arguing with their workers' compensation insurers that they need not pay any premium for a workers' compensation exposure in connection with their brokers or sales associates. Any insurer that continues to write coverage for real estate firms under these conditions is likely to find itself providing coverage on exposures for which no premium has been collected. In our view, this aspect of the bill is not only unworkable but also unfixable.

For the reasons stated above, we urge the Governor to disapprove this bill. Thank you for your consideration of our views.

Respectfully submitted,

Wesley S. Caldwell, III
Vice President
New York/New Jersey Region

WSC/ds

cc: Mr. George Mulligan
    Mr. Charles Coakley
    William Lifton, Esq.

AFL-CIO

Edward J. Cleary, *President*
Paul F. Cole, *Secretary-Treasurer*

Richard D. Winsten
*Legislative Director*

Richard Torrey          William McSpedon
*Associate Director*        *Assistant Director*

1985

S.5549-A - Lack, Flynn

This bill would define "employee" under the Labor Law to include professional musicians or performing artists for the purpose of qualifying for Workers' Compensation and Unemployment Insurance benefits, and requires Workers' Compensation coverage for taxi drivers who lease their cabs. The bill also excludes real estate brokers, who can be defined as independent contractors under Federal tax law, from coverage under State Workers' Compensation and Unemployment Insurance Laws.

Currently, many musicians and performing artists do not receive unemployment insurance and workers' compensation benefits because their employers treat them as independent contractors. These employers do not pay social security taxes, fringe benefit contributions, unemployment insurance taxes, or workers' compensation premiums. By treating musicians and performers in this manner, they attempt to deny them unemployment insurance and workers' compensation benefits even if the musician or employee otherwise would qualify under the current administrative definition of "employee". This definition focuses on whether the employee exercises independent judgement in his work or is under the supervision or control of an employer. A musician or performer who has the resources or determination to contest his independent contractor status may succeed in showing that he is an "employee" under the administrative definition. This procedure is, however, burdensome and costly for unemployed or underemployed musicians or performers. This bill would provide that employers could not evade the intent of the Labor Law by treating musicians and performers as independent contractors when they are really employees under the supervision and control of employers.

Similarly, drivers of leased taxi cabs have no employees of their own, have no capital investment in the business, nor guarantee of employment. A lessor may refuse to lease a cab to a driver at any time. The company or lessor retains ownership of the medallion (permit to do business) and exerts control over the driver. All of these conditions, while not totally controlling, are principal factors in determining whether an employer-employee relationship exists. In too many situations where a lessor exerts extensive control and supervision over a lessee, lessors still controvert claims and impose costs and delays on claimants and the state. In many cases where the claimant prevails in the administrative and legal process, an insurance carrier must pay benefits where no premiums have been collected. This legislation correctly establishes that taxi drivers who lease their taxi's are covered by the Workers' Compensation Law. It helps to eliminate costly and time consuming litigation, which in some instances results in disallowed claims due to the ambiguity of the present law.

-over-

New York State AFL-CIO, 99 Washington Avenue, Suite 1002, Albany, New York 12210 · (518) 436-8516
451 Park Avenue South, New York City, New York 10016 · (212) 684-6300

Ambiguity also exists regarding the status of real estate brokers.  In addition to their standing under Federal tax law, they frequently enter into contracts which stipulate that they are independent contractors.  It is inconsistent that State law requires coverage for real estate agents and salespeople who do not meet the definition of "employee" and who seldom need to claim benefits, while coverage of certain bona fide employees is not required.  This legislation clearly defines taxi drivers and musicians or performing artists as employees and real estate brokers as independent contractors.  As a result it should reduce a wholly unnecessary administrative burden currently placed on the Unemployment Insurance and Workers' Compensation systems.

The New York State AFL-CIO urges your support for this bill.

opeiu-153

3/10/86

000051

# SUPPORT MEMORANDUM

**New York State AFL-CIO**

Edward J. Cleary, *President*
Paul F. Cole, *Secretary-Treasurer*

Richard D. Winsten
*Legislative Director*

Richard Torrey
*Associate Director*

William McSpedo
*Assistant Director*

1985

S.5549-*B* - Lack, Flynn
*Calendar No. 364*

This bill would define "employee" under the Labor Law to include
professional musicians or performing artists for the purpose of
qualifying for Workers' Compensation and Unemployment Insurance bene-
fits, and requires Workers' Compensation coverage for taxi drivers
who lease their cabs. The bill also excludes real estate brokers,
who can be defined as independent contractors under Federal tax law,
from coverage under State Workers' Compensation and Unemployment
Insurance Laws.

Currently, many musicians and performing artists do not receive
unemployment insurance and workers' compensation benefits because
their employers treat them as independent contractors. These
employers do not pay social security taxes, fringe benefit contri-
butions, unemployment insurance taxes, or workers' compensation
premiums. By treating musicians and performers in this manner,
they attempt to deny them unemployment insurance and workers' com-
pensation benefits even if the musician or employee otherwise would
qualify under the current administrative definition of "employee".
This definition focuses on whether the employee exercises independent
judgement in his work or is under the supervision or control of an
employer. A musician or performer who has the resources or determina-
tion to contest his independent contractor status may succeed in
showing that he is an "employee" under the administrative definition.
This procedure is, however, burdensome and costly for unemployed or
underemployed musicians or performers. This bill would provide that
employers could not evade the intent of the Labor Law by treating
musicians and performers as independent contractors when they are
really employees under the supervision and control of employers.

Similarly, drivers of leased taxi cabs have no employees of
their own, have no capital investment in the business, nor guar-
antee of employment. A lessor may refuse to lease a cab to a
driver at any time. The company or lessor retains ownership of
the medallion (permit to do business) and exerts control over the
driver. All of these conditions, while not totally controlling,
are principal factors in determining whether an employer-employee
relationship exists. In too many situations where a lessor exerts
extensive control and supervision over a lessee, lessors still
controvert claims and impose costs and delays on claimants and the
state. In many cases where the claimant prevails in the administra-
tive and legal process, an insurance carrier must pay benefits where
no premiums have been collected. This legislation correctly estab-
lishes that taxi drivers who lease their taxi's are covered by the
Workers' Compensation Law. It helps to eliminate costly and time
consuming litigation, which in some instances results in disallowed
claims due to the ambiguity of the present law.

Ambiguity also exists regarding the status of real estate brokers. In addition to their standing under Federal tax law, they frequently enter into contracts which stipulate that they are independent contractors. It is inconsistent that State law requires coverage for real estate agents and salespeople who do not meet the definition of "employee" and who seldom need to claim benefits, while coverage of certain bona fide employees is not required. This legislation clearly defines taxi drivers and musicians or performing artists as employees and real estate brokers as independent contractors. As a result it should reduce a wholly unnecessary administrative burden currently placed on the Unemployment Insurance and Workers' Compensation systems.

The New York State AFL-CIO urges your support for this bill.


opeiu-153


3/10/86

STATE OF NEW YORK

MAR 10 5 03 PM '86

EXECUTIVE CHAMBER
RECEIVED



**NEW YORK STATE ASSOCIATION OF REALTORS, INC.**



107 Washington Avenue
P. O. Box 122
Albany, New York 12260
Telephone (518) 462-9563

---

| Donald K. Hopkins, Jr. | Alan Yassky | John D. Dwyer | John M. Gallinger | Charles M. Staro |
|---|---|---|---|---|
| President | President-Elect | Vice President | Secretary/Treasurer | Executive Vice President |

July 28, 1986

The Honorable Mario Cuomo
Governor of New York State
Executive Chamber
State Capitol Building
Albany, New York 12224

Dear Governor Cuomo:

On behalf of the more than 32,000 members of the New York State
Association of REALTORS®, I respectfully request your favorable
consideration of Senate bill 5549-C by Senator Lack (Assembly bill
1596-A by Assemblyman Robach) which is presently on your desk.

This legislation will add clarity to an area of law involving the
real estate brokerage business by virtue of establishing a definitive
test for the determination whether an individual associated with a
real estate broker is an independent contractor.

With the enactment of the Tax Equity and Fiscal Responsibility Act
of 1982, real estate professionals were included in the recognized
group of "independent contractors" who were exempted from federal
income tax withholding.  The legislation before you utilizes the
basic elements of this test as well as requiring that a contract
containing specific provisions indicative of independent contractor
status be executed between the parties within the past twelve to
fifteen months.  More important, this is in response to your message
disapproving similar legislation in 1984.  This legislation makes
it clear that any such contract must not have been executed under
duress therby helping to insure that workers who enter into the
same are not forced to forego benefits in order to pursue their
livelihood.

Presently Arizona, Florida, Illinois, Kansas, Louisiana, Maine,
Maryland, Massachusetts, Missouri, Oklahoma, Oregon, Texas,
Colorado, West Virginia, Michigan, New Hampshire, New Jersey,
Virginia, and Georgia have statutes on their books granting similar
exemptions for real estate professionals from these coverages.  The
membership of the New York State Association of REALTORS® feel
strongly that the enactment of this legislation is likewise justified
for several reasons.

---



REALTOR® — is a registered mark which identifies a professional
in real estate who subscribes to a strict Code of Ethics as a member of
the NATIONAL ASSOCIATION OF REALTORS.

000054

First, the real estate brokerage industry in New York provides a livelihood for thousands of its citizens. With an average part-time income of between $15,000 and $18,000, the industry in New York as presently structured provides sufficient flexibility to allow for formal employment relationships for many, as well as allowing those who choose to work in a more independent and individual environment to work as independent contractors.

The proposal before you will in no way alter or inhibit the existence of formal employer/employee relationships between brokers and their associates. This type of relationship will be allowed to continue and flourish. However, what it will do is serve to ensure the field of real estate brokerage will remain open as a viable income source to the thousands of individuals who may prefer to work in a part-time capacity, or who, more importantly, may enjoy the self determination of their hours and conditions of employment, as well as their level of income.

The availability of this statutory test, recognized not only on the state level but on the federal level as well, presents a unique opportunity to add certainty to an area of the law which heretofore found resolution on a costly and time consuming case-by-case basis.

We respectfully submit that Article 12-A of the Real Property Law, which governs real estate sales is clearly a statute designed to police the practices of those licensed by the state to sell real estate but not to determine their employment status. Chapter 226 of the Laws of 1980 which amended Article 12-A as well as the regulations enacted subsequently thereto by the Department of State, see 19 NYCCR §§175.13 through 175.26, made it clear that in New York State there is no statutory or regulatory presumption that those associated with a real estate broker were employees in all circumstances. However, these changes, while beneficial, still left behind the common law standards for determining status. Thus, the issue in general remains characterized by uncertainty and the door is left open for unnecessary litigation. This has worked a chilling effect on the willingness of brokers who clearly serve in a supervisory capacity only, see Matter of 12 Cornelia Street, Inc. v. Philip Ross as Industrial Commissioner 56 NY2d 895 (1982), to expand their sales staff thereby opening the opportunity of independent business to even more citizens of this state.

Quite simply, the heart of this legislation is the equity that it will bring about. Those brokers, who by the statutory system of industry self-regulation take responsibility for the professional supervision of their licensees who in turn have chosen to declare themselves as self-employed for income tax purposes, will not become unfairly burdened with the cost of providing the ancillary benefits of employment to those same individuals. On the other hand, those licensees who enjoy the benefits and burdens of a formal employment relationship with their broker will continue to receive the same.

The real estate industry in New York is truly unique.  Not only is
it characterized by a special brand self regulation, but also the pro-
duct transacted, namely land itself, when sold is scrutinized time
and time again by all involved ie. brokers, lawyers, title companies
prior to its actual transfer.

We submit, that the unique quality of our product, as well as the unique
character of our industry, namely its regulatory structure, dis-
tinguishes real estate from other direct sellers.  Door to door sellers
of cosmetics and household products, for example, are not licensed
or regulated in any degree similar to real estate salespeople and
the manner in which they do business cannot and should not be compared
thereto.  Accordingly, this legislation should not be viewed as
establishing a precedent which could soon be followed by other
industries claiming a similar status for their participants.

In reference to this measure's impact on unemployment benefits in
particular, we must ask when a licensed agent would become unemployed?
A part time individual who has his or her license held by a broker can
sell a home at any time and earn a substantial commission.  Conversely,
there is no mandate that they produce a commission earning sale with
any degree of regularity to maintain their association.  Therefore,
any measure of unemployment as a determining factor as to the individual's
independence in not relevent.

Further, the ability of reasonable individuals to differ philosophically
on the issues raised by this proposal has been previously addressed
by the Secretary of State who recognized that independent contractor
status does exit in the real estate brokerage industry (see memo attached)
We therefore simply request that you allow these philosophical
differences to continue but allow those brokers and salespeople who
choose to operate in this independent contractual arrangements to
make use of the clear cut test that it will provide.

In summation this measure will innure to the benefit of all who are
involved in the real estate industry in New York--salesperson and
broker alike.  The sense of clarity and certainty that it will provide
in the law will continue to open the avenues of self-achievement inherent
in the industry, will continue to allow the marketing of homes for and
to the consumer in a cost effective and efficient manner beneficial to
all involved.

For the above stated reasons, we urge your favorable consideration
of measure and your signing the same into law.

Respectfully submitted,

Charles M. Staro
Executive Vice President

Lester Shulklapper
Legislative Counsel, NYSAR

000056

STATE
DEPARTMENT OF STATE
270 BROADWAY
NEW YORK, N.Y.

RECEIVED
BUFFALO OFFICE
JAN 3 1977
DEPARTMENT OF STATE

MARIO M. CUOMO
SECRETARY OF STATE

Numerous real estate brokers have asked the Department of State whether salesmen hired by brokers pursuant to Section 440 of the Real Property Law are also employees under Article 18 of the Labor Law, the Unemployment Insurance Law.   If salespersons hired by brokers are employees under the unemployment insurance act, the brokers will be required to make unemployment insurance contributions for their employees.

It is clear under the present law that the fact that a person is employed as a salesman for purposes of Article 12-A of the Real Property Law does not automatically make him an employee under the unemployment insurance law.  This was stated clearly by the Court of Appeals in  In re Wilson Sullivan Co., 289 N.Y. 113, 44 N.E. 2d 389 (1942).  In that case the Court of Appeals, in reversing a finding of the Unemployment Insurance Appeal Board that the salesmen were employees, stated that the recognized common law relationship of independent contractor was not outlawed by the Real Property Law.  Wilson Sullivan is still the law today. See In re Charles E. Willis & Co., 37 A.D. 2d 869, 325 N.Y.S. 2d 109 (3rd Dept.1971).

Since real estate salesmen are not automatically employees, each case must be considered on its own particular facts to determine whether a salesman is an employee or an independent contractor.  The ultimate issue in each case is the amount of control the employee has over the agent in respect of the manner in which the agent's work is done. Matter of Morton, 284 N.Y. 167, 30 N.E. 2d 369 (1940).  The higher the degree of control reserved by an employer the more likely the agent will be deemed an employee.

Based on the issue of control, the courts have split in determining in individual cases whether real estate salesmen are employees or independent contractors.  In certain cases, the salesmen have been held to be independent contractors.  In re Wilson Sullivan Co., supra; Nixon Realty v. Levine, 43 A.D. 2d 1002, 352 N.Y.S. 2d 270, (3rd Dept.1974);  In re Charles E. Willis & Co., supra; while in other cases the salesmen have been held to be employees. First-Met Realty Corp. v. Levine, 50 A.D. 2d 637, 374 N.Y.S. 2d 766 (3rd Dept. 1975); Lansky v. LTA Realty Corp., 46 A.D. 2d 599, 365 N.Y.S. 2d 50 (3rd Dept. 1975); Claim of Lawrence, 46 A.D. 2d 953, 362 N.Y.S. 2d 66 (3rd Dept. 1974); In the Matter of Migatz; 40 A.D. 2d 902, 337 N.Y.S. 2d 577, (3rd Dept. 1972); In the matter of the Liability of Inter City Associates Inc., 284 App. Div. 673,134 N.Y.S. 2d 427 (3rd Dept.1954).

As a general rule, if an employing broker wants his salesmen to be deemed independent contractors, he should adhere closely to the fact pattern of In re Wilson Sullivan Co.. In the Wilson Sullivan case, the broker supplied his salesmen with office and desk space, stationery, and telephone service.

000057

# KRISS AND KRISS

### ATTORNEYS AT LAW

———

150 STATE STREET

ALBANY, NEW YORK 12207

MARK C. KRISS
CHARLES T. KRISS

———

DOMINICK J. BRIGNOLA
STEPHEN M. NAGLE

TELEPHONE
(518) 449-2037

Evan A. Davis
Counsel to the Governor
Executive Chamber
State Capital
Albany, New York  12224

July 28, 1986

RE:  S5549C (Lack)
AN ACT to amend the labor law and the workers' compensation law, in
relation to musicians and artists, qualified real estate and
agents coverage of owners and operators of taxicabs.

Honorable Mr. Davis:

This bill is presently before the Governor for his consideration.  On behalf
of the Alliance of American Insurers, and its over one hundred seventy member
companies, I am writing in opposition to the above bill which would, <u>inter alia</u>,
exclude from the definition of employee in the Workers' Compensation Law a licensed
real estate broker or salesman who is paid on a commission basis and who is
employed under a written contract providing in part that such individual will not
be treated as an employee for federal tax purposes.

The New York Workers' Compensation Law is designed, with very few exemptions,
to provide coverage to injured workers.  There has always been a strong presumption
by the courts and the Workers' Compensation Board for inclusion rather than
exclusion in close cases.  This presumption we believe is based on a strong social
policy decision that injured workers should be compensated quickly and fairly and
should not be left in fear that an employer will contend that they were not truly
employees.

For many years real estate brokers have contended that they should not be
required to pay workers' compensation insurance premiums for their real estate
salesmen.  The position of the brokers is superficially understandable, but not
realistic.  They perceive their salespersons as independent contractors because:
1.  They don't pay them salaries or deduct taxes; 2.  They pay commissions only
when the salespersons have sold a house or rented an apartment for the broker; 3.
The salespersons usually use their own cars and pay for their own auto expenses;
and 4.  The real estate sales person must be licensed by the State to work for a
real estate broker.

For purposes of exclusion from workers' compensation coverage, however, the
term independent contractor has always been interpreted narrowly and is

000058

AN ACT to amend the labor law and the workers' compensation law, in
relation to musicians and artists, qualified real estate agents and
coverage of owners and operators of taxicabs.

traditionally limited to one who acts as a principal rather than an agent, as
evidence by setting their own price in the market place. Under New York law,
however, real estate salesmen are not free to work alone buying and selling real
estate. They must work for a licensed real estate broker. Real estate salesmen
cannot set their own prices for a property, and any offer received from a buyer
must be submitted both to the seller as well as the licensed broker who the
salesman represents.

Further, the sales function is an integral part of a broker's business
operation. Without these alleged independent contractor salesman performing this
work, a broker would have to hire regular employees to do it. For otherwise, there
would be no business conducted. This differs from hiring a plumber to perform a
specific job for a specific price, where there is no continuous service of the
person performing the work. Real estate salesmen have an ongoing relationship with
the broker they work for. Other examples of "direction and control" by a broker
over a salesman include the fact that the salesman does not have any investment in
the facilities used to perform his or her services. The broker pays all expenses
for the office and the investment in the business, and ordinarily provides salesmen
with a desk and a telephone.

The broker ordinarily establishes a sequence of metering out customers as
they come in to the office in response to ads or "cold" visits. In this manner,
all salesmen get as near as possible to an even number of potential customers.

The contracts between brokers and salesmen pursuant to the terms of the bill
can be terminated at any time. Usually, these contracts provide that a salesman
may be terminated if their personal conduct is not up to the standards of the
broker, or could place the broker in a bad light with their customers.

By its terms the bill requires that the written contract not be executed
under "duress" and that discretion be given the salesmen respecting working hours
and other employment, however the legislation may nevertheless place prospective
employees in the position of having to forego unemployment insurance, workers'
compensation and disability benefits in order to obtain employment. Recent changes
in the federal tax law permit real estate agents to be treated as independent
contractors rather than employees for purposes of withholding taxes, including
social security if an "employment contract" so provides. Formerly, federal law
required a multi-factorial analysis of the relationship between the parties to
determine whether an employer-employee relationship existed. The abandonment of
this approach for the real estate agent has resulted in a hardship to many
"employees" who are now treated as independent contractors and required to make
substantially greater contributions to social security. The "independent
contractor" must pay almost twice the amount paid by an employee in social security
withholding taxes. If New York were to adopt a "contract" approach, in lieu of an
analysis of all the circumstances test respecting worker's compensation, the
hardship of a lack of workers' compensation coverage, unemployment insurance and
disability benefits would similarly be visited upon "employees" who lack sufficient
negotiating strength to ensure that an employment contract retained their status as
"employees".

000059

Page 3      AN ACT to amend the labor law and the workers' compensation law, in relation to musicians and artists, qualified real estate agents and coverage of owners and operators of taxicabs.

While the bill would, on the one hand exempt real estate salesman from workers' compensation coverage, concomitantly it would expressly include two other groups of workers (musicians and other performers and taxicab drivers). If the proponents of the measure recognize that there is merit in including musicians, performers, and taxicab drivers within the workers' compensation system it is difficult to comprehend the rational for deleting the real estate salesperson.

Finally a similar bill was vetoed by Governor Cuomo in 1984 (S4210-B Pisani) for many of the reasons outlined above.  The differences in these bills do not justify a different result.

This bill is internally inconsistent with longstanding New York Workers' Compensation Law. We urge disapproval.

Respectfully,

MCK/dmo
encs.

Mark C. Kriss, Esq.
Kriss and Kriss
Legislative Counsel
Alliance of American Insurers

t4/moallian

000060

DONALD J BOYLE

176 WASHINGTON AVE., ALBANY, NEW YORK 12210 (518) 449-8786

July 31, 1986

Hon. Evan A. Davis
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York  12224

Dear Mr. Davis:

### MEMORANDUM IN OPPOSITION

| | |
|---|---|
| S.5549-C by Senator Lack et al. | AN ACT to amend the labor |
| A.1596-A by M. of A. Robach et al. | law and the workers' compensation law, in relation to musicians and artists, qualified real estate agents and coverage of owners and operators of taxicabs |

The New York State Workers' Compensation Bar Association
**OPPOSES** the above-cited legislation, which is now before the
Governor for consideration.  The bill would include professional
musicians and taxicab operators in the labor law (for unemployment
insurance coverage) and the workers' compensation law (for compensa-
tion and disability benefits) and would exclude real estate
agents from coverage under these two sections of law.

We are concerned about the categorical exclusion of real
estate agents from the benefits provided under New York's system
of workers compensation insurance.  Traditionally, there have
been some real estate agents whose terms and conditions of employ-
ment are such that they do not qualify as employees for the
purpose of workers' compensation.  There are others whose terms
and conditions of employment are such that they should qualify
for workers' compensation.  That decision should be made on
a case-by-case basis, as it has been done in the past.  To estab-
lish the type of categorical exclusion that this bill would
create will result in a denial of benefits to some injured real
estate agents who would otherwise have been eligible to receive
compensation under our laws.

We point out that the section of S.5549-C/A.1596-A pertaining
to real estate agents is no different in substance from S.4210-B
of 1984, which the Governor vetoed that year (Veto #18).  We

-2-

strongly agree with that decision, as explained in his message
of disapproval:

> The bill would contravene the sound public policy of
> universal coverage for all employees under these laws.
> The Workers' Compensation Board and the Department of
> Labor are required by statute to make determinations
> on a case-by-case basis as to when coverage is required.
> This is as it should be.

For this important policy reason we urge that the Governor VETO
S.5549-C/A.1596-A.

Finally, we must object to the approach taken by this bill,
whereby additional unemployment insurance and workers' compensation
coverage - for professional musicians and taxicab operators-
is "traded" for decreased coverage - for real estate agents.
Coverage of each of these different types of employees should
be treated on its own merits.

Accordingly, we strongly urge the Governor to **DISAPPROVE**
S.5549-C/A.1596-A.

Very truly yours,

Barbara J. Ahern, Esq.
Legislative Representative
NYS Workers Compensation
Bar Association

BJA:jmr

000062

Case 1:07-cv-03778-DC    Document 11-7    Filed 10/19/2007    Page 25 of 40



# NEW YORK STATE ASSOCIATION OF REALTORS, INC.

RECEIVED

107 Washington Avenue
P. O. Box 122
Albany, New York 12260
Telephone (518) 462-9563

JUL 31

| Donald K. Hopkins, Jr. | Alan Yassky | John D. Dwyer | John M. Gallinger | Charles M. Staro |
|---|---|---|---|---|
| President | President-Elect | Vice President | Secretary/Treasurer | Executive Vice President |

July 28, 1986

The Honorable Mario Cuomo
Governor of New York State
Executive Chamber
State Capitol Building
Albany, New York 12224

Dear Governor Cuomo:

On behalf of the more than 32,000 members of the New York State
Association of REALTORS®, I respectfully request your favorable
consideration of Senate bill 5549-C by Senator Lack (Assembly bill
1596-A by Assemblyman Robach) which is presently on your desk.

This legislation will add clarity to an area of law involving the
real estate brokerage business by virtue of establishing a definitive
test for the determination whether an individual associated with a
real estate broker is an independent contractor.

With the enactment of the Tax Equity and Fiscal Responsibility Act
of 1982, real estate professionals were included in the recognized
group of "independent contractors" who were exempted from federal
income tax withholding.  The legislation before you utilizes the
basic elements of this test as well as requiring that a contract
containing specific provisions indicative of independent contractor
status be executed between the parties within the past twelve to
fifteen months.  More important, in response to your message dis-
approving similar legislation in 1984, this legislation makes it
clear that any such contract must not have been executed under
duress thereby helping to insure that workers who enter into
the same are not forced to forego benefits in order to pursue their
livelihood.

Presently Arizona, Florida, Illinois, Kansas, Louisiana, Maine,
Maryland, Massachusetts, Missouri, Oklahoma, Oregon, Texas,
Colorado, West Virginia, Michigan, New Hampshire, New Jersey,
Virginia, and Georgia have statutes on their books granting similar
exemptions for real estate professionals from these coverages.  The
membership of the New York State Association of REALTORS® feel
strongly that the enactment of this legislation is likewise justified
for several reasons.



REALTOR® — is a registered mark which identifies a professional
in real estate who subscribes to a strict Code of Ethics as a member of
the NATIONAL ASSOCIATION OF REALTORS.

000063

First, the real estate brokerage industry in New York provides a livelihood for thousands of its citizens. With an average part-time income of between $15,000 and $18,000, the industry in New York as presently structured provides sufficient flexibility to allow for formal employment relationships for many, as well as allowing those who choose to work in a more independent and individual environment to work as independent contractors.

The proposal before you will in no way alter or inhibit the existence of formal employer/employee relationships between brokers and their associates. This type of relationship will be allowed to continue and flourish. However, what it will do is serve to ensure the field of real estate brokerage will remain open as a viable income source to the thousands of individuals who may prefer to work in a part-time capacity, or who, more importantly, may enjoy the self determination of their hours and conditions of employment, as well as their level of income.

The availability of this statutory test, recognized not only on the state level but on the federal level as well, presents a unique opportunity to add certainty to an area of the law which heretofore found resolution on a costly and time consuming case-by-case basis.

We respectfully submit that Article 12-A of the Real Property Law, which governs real estate sales is clearly a statute designed to police the practices of those licensed by the state to sell real estate but not to determine their employment status. Chapter 226 of the Laws of 1980 which amended Article 12-A as well as the regulations enacted subsequently thereto by the Department of State, see 19 NYCCR §§175.13 through 175.26, made it clear that in New York State there is no statutory or regulatory presumption that those associated with a real estate broker were employees in all circumstances. However, these changes, while beneficial, still left behind the common law standards for determining status. Thus, the issue in general remains characterized by uncertainty and the door is left open for unnecessary litigation. This has worked a chilling effect on the willingness of brokers who clearly serve in a supervisory capacity only, see Matter of 12 Cornelia Street, Inc. v. Philip Ross as Industrial Commissioner 56 NY2d 895 (1982), to expand their sales staff thereby opening the opportunity of independent business to even more citizens of this state.

Quite simply, the heart of this legislation is the equity that it will bring about. Those brokers, who by the statutory system of industry self-regulation take responsibility for the professional supervision of their licensees who in turn have chosen to declare themselves as self-employed for income tax purposes, will not become unfairly burdened with the cost of providing the ancillary benefits of employment to those same individuals. On the other hand, those licensees who enjoy the benefits and burdens of a formal employment relationship with their broker will continue to receive the same.

The real estate industry in New York is truly unique. Not only is it characterized by a special brand self regulation, but also the product transacted, namely land itself, when sold is scrutinized time and time again by all involved ie. brokers, lawyers, title companies prior to its actual transfer.

We submit that the unique quality of our product, as well as the unique character of our industry, namely its regulatory structure, distinguishes real estate from other direct sellers. Door to door sellers of cosmetics and household products, for example, are not licensed or regulated in any degree similar to real estate salespeople and the manner in which they do business cannot and should not be compared thereto. Accordingly, this legislation should not be viewed as establishing a precedent which could soon be followed by other industries claiming a similar status for their participants.

In reference to this measure's impact on unemployment benefits in particular, we must ask when a licensed agent would become unemployed? A part time individual who has his or her license held by a broker can sell a home at any time and earn a substantial commission. Conversely, there is no mandate that they produce a commission earning sale with any degree of regularity to maintain their association. Therefore, any measure of unemployment as a determining factor as to the individual' independence in not relevent.

Further, the ability of reasonable individuals to differ philosophically on the issues raised by this proposal has been previously addressed by the Secretary of State who recognized that independent contractor status does exit in the real estate brokerage industry (see memo attached) We therefore simply request that you allow these philosophical differences to continue but allow those brokers and salespeople who choose to operate in this independent contractual arrangements to make use of the clear cut test that it will provide.

In summation this measure will innure to the benefit of all who are involved in the real estate industry in New York--salesperson and broker alike. The sense of clarity and certainty that it will provide in the law will continue to open the avenues of self-achievement inherent in the industry, will continue to allow the marketing of homes for and to the consumer in a cost effective and efficient manner beneficial to all involved.

For the above stated reasons, we urge your favorable consideration of measure and your signing the same into law.

Respectfully submitted,

Charles M. Staro
Executive Vice President

Lester Shulklapper
Legislative Counsel, NYSAR

000065

S5549



**New York State**
**AFL-CIO**

**UNITY**

91 Park Avenue South
New York, N.Y. 10016
(212) 689-9320

100 South Swan Street
Albany, N. Y. 12210-1939
(518) 436-8516

RECEIVED

EXECUTIVE CHAMBER

**VICE PRESIDENTS**

**EDWARD J. CLEARY**
President

**PAUL F. COLE**
Secretary-Treasurer

SAMUEL AGATI
JOSEPH BENBENEK
JOHN BOWERS
WALTER BUTLER
FRANK CALECA
ENIO CARRION
JOHN J. COLEMAN
BARBARA COLTON
FILENO DeNOVELLIS
FRANK DROZAK
SANDRA FELDMAN
DONALD J. FUNK

ROBERT GOLLNICK
MICHAEL GOODWIN
VICTOR GOTBAUM
STANLEY HILL
SAL INGRASSIA
JAMES JOY, JR.
RANK LANDAU
JOHN LAWE
JOSEPH LIA
JAY MAZUR
GEORGE McDONALD

WILLIAM McSPEDON
RICHARD MOLISANI
ARTHUR MOORE
J. RAY MULLETT
TOM NATCHURAS
JOSEPH PETRUCCELLI
JAN PIERCE
VITO PITTA
VICTOR SAN FILIPPO
JOSEPH C. TALARICO
DORIS TURNER

July 28, 1986

The Honorable Mario M. Cuomo
Governor, State of New York
Executive Chamber
Albany, New York 12224

Dear Governor Cuomo:

I am writing to urge your approval of S.5549-C, Lack, et al. This bill would define "employee" under our labor laws to include professional musicians and performing artists and thus require their coverage for unemployment insurance and Workers' Compensation benefits. It similarly defines taxi drivers who lease their taxis as employees. It also excludes real estate brokers, and agents who sign contracts in which they expressly agree to act as independent contractors, from the definition of employee under the unemployment insurance and workers' compensation laws. These contracts must be executed without duress and must accurately reflect contractor status by providing for substantial commission sales income, freedom to engage in outside employment, contractor payment of travel and entertainment expenses, and termination rights for either party upon adequate notice.

Currently, many musicians and performing artists do not receive unemployment insurance and workers' compensation benefits because their employers treat them as independent contractors. These employers do not pay social security taxes, fringe benefits contributions, unemployment insurance taxes, or workers' compensation benefits even if the musician or employee otherwise would qualify under the current administrative definition of "employee". This definition focuses on whether the employee exercises independent judgement in his work or is under the supervision or control of an employer. A musician or performer who has the resources or determination to contest his independent contractor status may succeed in showing that he is an "employee" under the administrative definition. This procedure is, however, burdensome and costly for unemployed or underemployed musicians or performers. This bill would provide that employers could not evade the intent of the Labor Law by treating musicians and

000066

- 2 -

performers as independent contractors when they are really
employees under the supervision and control of employers.

Similarly, drivers of leased taxi cabs have no employees
of their own, have no capital investment in the business, nor
guarantee of employment. A lessor may refuse to lease a cab to
a driver at any time. The company or lessor retains ownership
of the medallion (permit to do business) and exerts control over
the driver. All of these conditions, while not totally controlling,
are principal factors in determining whether an employer-employee
relationship exists. In too many situations where a lessor exerts
extensive control and supervision over a lessee, lessors still
controvert claims and impose costs and delays on claimants and
the state. In many cases where the claimant prevails in the
administrative and legal process, an insurance carrier must pay
benefits where no premiums have been collected. This legislation
correctly establishes that taxi drivers who lease their taxi's
are covered by the Workers' Compensation Law. It helps to
eliminate costly and time consuming litigation, which in some
instances results in disallowed claims due to the ambiguity of
the present law.

Ambiguity also exists regarding the status of real estate
brokers. In addition to their standing under Federal tax law,
they frequently enter into contracts which stipulate that they are
independent contractors. It is inconsistent that State law
requires coverage for real estate agents and salespeople who do
not meet the definition of "employee" and who seldom need to
claim benefits, while coverage of certain bona fide employees
is not required. This legislation clearly defines taxi drivers
and musicians or performing artists as employees and real estate
brokers as independent contractors. As a result it should reduce
a wholly unnecessary administrative burden currently placed on the
Unemployment Insurance and Workers' Compensation systems.

The New York State AFL-CIO urges your approval of this
bill.

Sincerely,

Richard D. Winsten
Direct or Legislation
and Research

Edward J. Cleary
President

EJC:RDW:mkn
opeiu/153

000067



90 South Swan Street
Albany, New York 12210
518-463-4319

# New York Chamber of Commerce and Industry
*An affiliate of the New York City Partnership, Inc.*

**David Rockefeller**
*Chairman*

**Edward S. Cabot**
*President*

**E. Virgil Conway**
*Treasurer*

*Directors*
Burt J. Abrams
Hans H. Angermueller
Rand V. Araskog
Thornton F. Bradshaw
Alfred Brittain III
Sharnia Buford
George Bugliarello
Willard C. Butcher
Edward S. Cabot
John J. Carroll
E. Virgil Conway
John J. Creedon
Mark J. D'Arcangelo
William M. Ellinghaus
William C. Ferguson
Owen J. Flanagan
Robert F. Froehlke
John A. Georges
George J. Greenberg
Maurice R. Greenberg
John M. Harris
Arthur Hauspurg
Harry B. Helmsley
Frank J. Macchiarola
Charles Marshall
John F. McGillicuddy
G.G. Michelson
Edward J. Mortola
J. Richard Munro
Edmund T. Pratt, Jr.
Lawrence G. Rawl
James D. Robinson III
David Rockefeller
Felix G. Rohatyn
Donald K. Ross
Lewis Rudin
James E. Seitz
Richard R. Shinn
Walter V. Shipley
Delbert C. Staley
Preston Robert Tisch
Edward H. Tuck
Richard F. Tucker
Richard A. Voell
Eugene H. Webb
George Weissman

August 7, 1986

Honorable Evan A. Davis
Counsel to the Governor
Executive Chamber, Room 225
State Capitol
Albany, New York 12224

re:  S. 5549-C

Dear Mr. Davis:

The New York Chamber urges the Governor to veto
S. 5549-C, which would create a new class of employers
composed of thousands of ordinary people who merely hire
a performer for a single occasion. As a result, indi-
viduals who hire musicians for a wedding or a magician
for a child's birthday party would be forced to assume
responsibility for reporting employment information and
forwarding unemployment insurance taxes and would be
liable for any penalties for which any covered employer
may be liable.

This bill would create, for unemployment insurance
purposes, an employer-employee relationship between all
performers and those for whom they perform despite the
fact that such a relationship does not actually exist in
every instance. On the contrary, due to the nature of
these occupations, these individuals are often independent
contractors rather than employees.

Performers are already protected under existing
law where the employment status of the claimant is de-
termined on a case-by-case basis. Whether a performer
is an employee or an independent contractor depends on
the supervision, direction and control exercised by the
party for whom they have performed. Such a determination
can only be made upon the facts of each individual case.
This bill would preclude such an inquiry and would create
artificial employer-employee relationships where none in
fact exist.

Unemployment insurance was not intended to cover
occupations of this kind. Due to the casual and erratic
nature of the work, a musician or actor may work for a
different "employer" every day or for several "employers"

- 2 -

during a single day.  As a result, this bill would create an adminis-
trative nightmare for the Labor Department, for employers now covered
under unemployment insurance and for the new class of "employers"
that this bill would create.  Since payment for these services is
often made in cash, it would be virtually impossible to monitor
accurately wages and to prevent fraud.

Unemployment insurance was designed to protect those who are
involuntarily out of work.  The occupations affected by this bill
are marked by frequent and extended periods of unemployment that
are anticipated where work is, by its nature, unstructured and
irregular.  Thus, this bill would grant benefits to claimants who
are not unemployed "through no fault of their own."  As a result,
the bill would do more than create a new class of employers com-
prised of ordinary individuals -- it would impose additional costs
on employers who have no control over the employment of these
individuals and who are in no way responsible for their "unemployment."

Please contact me at (518) 463-4319 if you have any questions
concerning the Chamber's position on this bill.

Sincerely,

George W. Cooper
Vice President
State Government Affairs

GWC/bh



LOCAL
**802**
AF of M

**Associated Musicians of Greater New York**
330 WEST 42nd STREET, NEW YORK, N.Y. 10036 (212) 239-4802

RECEIVED
EXECUTIVE CHAMBER
AUG  4  4 32 PM '86
STATE OF NEW YORK

OFFICERS

President
JOHN GLASEL

Vice-President
JOHN PALANCHIAN

Secretary
CARL JANELLI

Treasurer
BARRY FURNFELD

EXECUTIVE BOARD

BEN ALTMAN
BRUCE BONVISSUTO
BILL CROW
LUCILLE DIXON
BOB HALEY
ERWIN L. PRICE
ABE ROSEN
CHARLES SMALL
JOHN WARE

TRIAL BOARD

Chair
MARTIN D. LAMBERT

Clerk
GAYLE DIXON

JOHN CERISI
ERIK KESSLER
GARY KOCH
DAVE MOORE
RON PRESTIA
MARILYN REYNOLDS
ANDY ZOOB

July 31, 1986

The Honorable Mario M. Cuomo
Governor, State of New York
Executive Chamber
Albany, New York 12224

Dear Governor Cuomo:

I am writing to urge you to approve the recently passed
S.5549-C. This bill defines our professional musician
members and other workers in the performing arts as
employees for the purpose of workers' compensation and
unemployment and disability insurance benefits. It also
covers taxi drivers who lease taxis in the same manner. The
enaction of this law will end the all too common necessity
for musicians and other artists to resort to lengthy and
costly appeals in order to collect benefits which, according
to past practice, have uniformly been granted them when
their eligibility has been contested by way of the argument
that they are independent contractors. The passage of this
bill would end the inequity under which our members have
been suffering at times when they can least afford it.

Local 802 therefore urges your signature of this bill.

Sincerely,

John Glasel
President

JG/cm

CH 903
LACK

<u>MEMORANDUM</u>

Senate Bill ( 5549-C )                    Introduced by <u>Senator James J. Lack</u>

Assembly Bill <u>1596-A</u>                  Introduced by <u>Assby. Roger Robach</u>

         AN ACT to amend the labor law and the workers'
compensation law, in relation to musicians and artists,
qualified real estate agents and coverage of owners and
operators of taxicabs

## PURPOSE:

    To provide unemployment insurance, workers' compensation and
disability benefits for musicians and performing arts personnel engaged in
the performing arts, working for television or radio stations or networks,
film productions, theaters, hotels, restaurants, night clubs or similar
establishments. Also, to provide workers' compensation benefits for
persons leasing taxicabs for the purpose of operating a taxi pursuant to
Section 148-a of the Vehicle and Traffic Law or operating under control of
the taxicab owner. It would exempt real estate brokers and salespeople
who qualify as independent contractors for Federal income tax purposes
from receiving unemployment insurance, workers' compensation and disability
benefits.

## SUMMARY OF PROVISIONS:

    Section 1 would include professional musicians and persons otherwise
engaged in the performing arts and performing services as such in the
definition of employees entitled to receive unemployment insurance benefits.

    Section 2 would exclude real estate brokers and salespeople from the
definition of employment covered by unemployment insurance benefits if they
receive their compensation based upon sales or are independent contractors
for Federal tax purposes by written agreement.

    Section 3 would include persons who lease taxicabs to be operated
as taxicabs under the definition of employer for the purpose of covering
such lessee under the Workers' Compensation Law. Specifically excluded
are owner-operators operating the taxicab for 40 or more hours per week
and who lease the cab for some portion of the remaining time.

    Section 4 would exclude licensed real estate brokers or salespeople
from the definition of employee, thus not requiring that they be covered
for workers' compensation. Section 4 would also include drivers,
operators or lessees of taxicabs and professional musicians or persons
engaged in the performing arts in the definition of employee for coverage
under the Workers' Compensation Law.

    Section 5 would exclude service as a real estate broker or sales-
person from the definition of employment for workers' compensation
coverage. Section 5 would also include service of a driver, operator
or lessee of a taxicab as covered employment under the Workers' Compen-
sation Law.

000071

Section 6 would add professional musicians or persons engaged in the performing arts to the definition of employees required to be covered for disability benefits.

Section 7 would exclude real estate brokers or salepeople from the definition of employment for coverage for disability benefits.

## JUSTIFICATION:

This bill would exclude real estate brokers and salepeople from coverage under the Unemployment Insurance, Workers' Compensation and Disability Benefits Laws. It would also include professional musicians and persons engaged in the performing arts under these laws, and would include taxi drivers under the Workers' Compensation Law.

A rather unusual situation has arisen, where real estate brokers who, under Federal tax law, can be independent contractors, are presently required, under New York State law, to be covered for unemployment insurance, workers' compensation and disability benefits. On the other hand, professional musicians and artists and taxi drivers, wanting to be covered by these laws, often are not because they are forced to act as independent contractors and thus permit their "employers" to avoid covering them under these programs. This bill would satisfy both objectives -- it would exclude real estate brokers and salepeople from coverage, and include professional musicians, performing artists and taxi drivers under the law.

## FISCAL IMPLICATIONS:

None

## EFFECTIVE DATE:

The sixtieth day after it shall become law

This document has been added by
**New York Legislative Service, Inc.**
The Governor's Bill Jacket does not
contain these pages. However, we
feel that they may be helpful.

000072

STATE OF NEW YORK
EXECUTIVE CHAMBER
MARIO M. CUOMO, GOVERNOR

THIS EXTRA MATERIAL ADDED BY
NEW YORK LEGISLATIVE SERVICE, INC.
It is not part of the original
Governor's Bill Jacket

Press Office
518-474-8418
212-587-2126

FOR RELEASE:
IMMEDIATE, MONDAY
JULY 23, 1984

STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

July 19, 1984

TO THE SENATE:

I am returning herewith, without my approval, the following bill:

Senate Bill Number 4210-B, entitled:

#18
"AN ACT to amend the labor law and the workers' compensation law, in relation to qualified real estate agents"

N O T   A P P R O V E D

The bill would exempt licensed real estate brokers and sales agents from coverage under the Unemployment Insurance, Workers' Compensation and Disability Benefits Laws if (a) substantially all of the compensation received is directly related to sales or other output and (b) the services performed by the broker or sales agent are performed pursuant to a written contract which provides that the broker or sales agent will not be treated as an employee with respect to such services for federal tax purposes.

The bill would contravene the sound public policy of universal coverage for all employees under these laws. The Workers' Compensation Board and the Department of Labor are required by statute to make determinations on a case-by-case basis, as to when coverage is required. This is as it should be.

The bill might also place these workers in the position of having to give up unemployment insurance, workers' compensation and disability benefits in order to obtain employment. This would be contrary to the strong presumption of the State's laws that all employees are entitled to this coverage.

The Department of Labor, the Worker's Compensation Board, the Insurance Department, the State AFL-CIO, the Alliance of American Insurers and the American Insurance Association recommend disapproval of the bill.

The bill is disapproved.

(Signed) MARIO M. CUOMO

000073

STATE OF NEW YORK
EXECUTIVE CHAMBER
MARIO M. CUOMO, GOVERNOR

Press Office
518-474-8418
212-587-2126

FOR RELEASE:
IMMEDIATE, MONDAY
JULY 23, 1984

STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

July 19, 1984

TO THE SENATE:

I am returning herewith, without my approval, the
following bill:

Senate Bill Number 4210-B, entitled:

"AN ACT to amend the labor law and
the workers' compensation
law, in relation to qualified
real estate agents"

#18

N O T   A P P R O V E D

The bill would exempt licensed real estate brokers and
sales agents from coverage under the Unemployment Insurance,
Workers' Compensation and Disability Benefits Laws if (a)
substantially all of the compensation received is directly
related to sales or other output and (b) the services per-
formed by the broker or sales agent are performed pursuant
to a written contract which provides that the broker or
sales agent will not be treated as an employee with respect
to such services for federal tax purposes.

The bill would contravene the sound public policy of
universal coverage for all employees under these laws.  The
Workers' Compensation Board and the Department of Labor are
required by statute to make determinations on a case-by-case
basis, as to when coverage is required.  This is as it should
be.

The bill might also place these workers in the position
of having to give up unemployment insurance, workers' com-
pensation and disability benefits in order to obtain employ-
ment.  This would be contrary to the strong presumption of
the State's laws that all employees are entitled to this
coverage.

The Department of Labor, the Worker's Compensation Board,
the Insurance Department, the State AFL-CIO, the Alliance of
American Insurers and the American Insurance Association re-
commend disapproval of the bill.

The bill is disapproved.

(Signed) MARIO M. CUOMO

THIS DOCUMENT HAS BEEN ADDED BY
NY LEGISLATIVE SERVICE, INC.
IT IS NOT CONTAINED IN THE
GOVERNMENT FILE, HOWEVER, WE
FEEL THAT IT MAY BE HELPFUL.

C-903    S5549C



STATE OF NEW YORK
DEPARTMENT OF STATE
ALBANY, N.Y. 12231
M E M O R A N D U M

GAIL S. SHAFFER
SECRETARY OF STATE

DATE: August 4, 1986

TO:        Hon. Evan A. Davis
           Counsel to the Governor

FROM:      Maureen F. Glasheen  *m J&*
           General Counsel

SUBJECT:   S. 5549-C (Senators Lack, Flynn)
           Recommendation:  <u>No Objection</u>


        You requested our comments and recommendation on the above-numbered bill.

        This bill would amend the Labor Law and the Workers' Compensation Law to establish criteria as to whether a real estate broker or salesperson is an employee or an independent contractor for purposes of coverage under unemployment insurance and workers' compensation. It draws upon 26 U.S.C.A. § 3508 which sets forth elements whereby a real estate agent shall not be considered an employee for purposes of income tax withholding.

        The Department of State licenses real estate brokers and salespersons and provides supervision of their activities under Article 12-A of the Real Property Law.

        Our interest in the relationship between a broker and a salesperson is in assuring the broker provide supervision of his salespersons. Pursuant to Real Property Law § 441-(1)(d), regulation 19 NYCRR 175.21 requires that the broker provide "regular, frequent and consistent personal guidance, instruction, oversight and superintendence" of the salespersons associated with the real estate broker. This duty devolves upon the broker whether or not any other body of law may dominate the salesperson or "employee" of "independent contractor" for other purposes.

        This bill's provisions are not inconsistent with the requirements of supervision and the bill specifically provides for compliance with Article 12-A of the Real Property Law and regulations pertaining thereto.

        By memorandum of June 5, 1980, this Department recommended approval of 1980 S. 7554-B (L. 1980, c. 226) which bill amended Article 12-A of the Real Property Law to refer to salespersons as

000075

"associates" of real estate brokers rather than "employees," thus neutralizing the characterization of the relationship.

Because this bill does not affect the Department's administration of Article 12-A, but merely sets up standards for the determination of the salesperson-broker relationship for other purposes, this Department has no objection to the approval of this bill.

MFG/wly



**STATE OF NEW YORK**

**WORKERS' COMPENSATION BOARD**

180 LIVINGSTON STREET

BROOKLYN, NY 11248

ROBERT STEINGUT

CHAIRMAN

(718) 802-6671

GLADYS CARRION

GENERAL COUNSEL

October 8, 1986

Honorable Evan Davis
Counsel to the Governor
New York State Executive Chamber
The State Capitol
Albany, New York  12247

                    Re:  S5549C Lack, A1596A Robach,
                         Barbaro

Dear Mr. Davis:

We are in receipt of your request for our analysis, comments
and recommendations regarding the legislation noted above.
We appreciate the opportunity to present our position
on this bill and wish to advise you that we have no objection
to it.

The benefits the bill confers on taxi drivers and musicians
outweighs the detriment that may accrue to real estate
salespeople and brokers. This legislation amends the
Workers' Compensation Law to include driver/operator/lessors
of taxicabs as employees except in one instance where
such person leases the cab from a person who regularly
operates the cab an average of 40 or more hours per week.
Coverage would have to be provided by the lessor of the
cab, who would be deemed to be the employer.

This bill addresses a serious problem in the workers
compensation system. There have been a number of cases
involving leased cabs in which the issue of coverage
has been strenuously litigated. Although an employment
relationship has generally been found, there has been
great resistance by lessors of cabs to provide coverage.
When coverage has been provided there have been attempts
to make the lessee/employee pay for the coverage which
is illegal under §31 of the Workers Compensation Law.
Because of the severity of the problem we are in favor
of legislation that would specifically provide coverage.

October 8, 1986
Page Two

Honorable Evan Davis
Counsel to the Governor

There is less of a problem with regard to the coverage
of musicians or other performing artists. This legislation
specifically grants coverage to all such persons and
assists in addressing the related problem of identifying
who is the employer if a band or other group of performers
is involved.

We had reservations about the exclusion of certain real
estate sales persons and brokers. The exclusions in this
bill because of its contractual requirements will apply
to very few real estate sales people and brokers as a
great majority will be excluded.

On balance the cause of workers compensation coverage
is better served by this legislation.

In view of these points we wish to advise that we have
no objection to this legislation.

Sincerely,

Gladys Carrion
General Counsel

GC:mck