USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/24/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

JEAN-PAUL FOUCHÉCOURT,                :

        Plaintiff,         :

    - against -                  :          **MEMORANDUM DECISION**

METROPOLITAN OPERA ASSOCIATION,      :          07 Civ. 3778 (DC)
INC., and FRANCO ZEFFIRELLI,

        Defendants.        :

                  :

- - - - - - - - - - - - - - - - -x

**APPEARANCES:**         BUDIN, REISMAN, KUPFERBERG & BERNSTEIN, LLP
        Attorneys for Plaintiff
          By:  Gerard A. Connolly, Jr., Esq.
        112 Madison Avenue
        New York, NY  10016

        KATZ & RYCHIK, P.C.
        Attorneys for Defendant
         Metropolitan Opera Association, Inc.
          By:  Abe M. Rychik, Esq.
            Andrew N. Fluger, Esq.
        116 John Street, 7th Floor
        New York, NY  10038

**CHIN, District Judge**

On October 22, 2005, plaintiff Jean-Paul Fouchécourt
was performing the role of Bardolfo in Verdi's "Falstaff" at the
Metropolitan Opera House.  While on stage, he fell from a
platform, striking his head on the floor below.  He brings this
diversity action to recover damages for his injuries.

Defendant Metropolitan Opera Association, Inc. (the
"Met") moves to dismiss the complaint pursuant to Fed. R. Civ. P.
12(b)(6) for failure to state a claim upon which relief may be
granted.  The Met argues that Fouchécourt is covered by the New
York State Workers' Compensation Law and that, therefore, he is

barred from bringing this action.  I agree.  Consequently, the
motion is granted and the complaint is dismissed.

**BACKGROUND**

**A.    The Facts**

        The following facts are drawn from the complaint and
documents incorporated by reference.[1]  The facts alleged in the
complaint are assumed to be true for purposes of this motion.

        The Met owns and operates the Metropolitan Opera House
at Lincoln Center in New York City.  (Compl. ¶¶ 8, 9).  In
October 2005, the Met and defendant Franco Zeffirelli produced
the opera "Falstaff," by Giuseppe Verdi.  (Id. ¶¶ 15, 16, 36).
The Met and Zeffirelli were responsible for the design and
maintenance of the set.  (Id. ¶¶ 18-29).

        Fouchécourt is an opera singer.  He entered into a
contract with the Met and Zeffirelli to perform as a principal in
the production of "Falstaff."  (Id. ¶¶ 34, 35).  The contract
also provided that he would perform as a principal in "Manon."
(PX D).  It provided for a minimum of thirteen performances as a
principal and for four "covers" for the two roles in question.
(Id.).  It provided that Fouchécourt would be available for four
weeks of rehearsal (in the fall of 2005 and the spring of 2006)
as well as for two periods of engagement (from September 19, 2005
through October 22, 2005, and from April 3, 2006 through April 8,

---

        [1]    Both sides submitted evidentiary materials.  Some --
including Fouchécourt's performance contract and some of the
Workers' Compensation claims documents -- are incorporated into
the complaint by reference.

2006) when the operas were performed.  (<u>Id.</u>).  The contract specifically provided that no employer-employee relationship was created, and Fouchécourt was performing as an "outside contractor."  (Compl. ¶¶ 43-45).

On October 22, 2005, while Fouchécourt was performing on stage, he fell from the upper platform portion of the set.  (<u>Id.</u> ¶ 36).  He sustained serious injuries as a result.  (<u>Id.</u>).  Fouchécourt fell because the stage set was negligently and carelessly designed and maintained, and a dangerous and unsafe condition was created as a consequence.  (<u>Id.</u> ¶¶ 37-39).

Former defendant Hartford Fire Insurance Company ("Hartford") issued an insurance policy to the Met that was in effect at the time of Fouchécourt's accident.  (<u>Id.</u> ¶ 42).  After the accident, the Met and Hartford filed a workers' compensation claim on behalf of Fouchécourt.  (<u>Id.</u> ¶¶ 46-47; <u>see</u> PX B; DX D).  Fouchécourt has not received any workers' compensation benefits to account for lost income, but a portion of his medical bills were paid by the workers' compensation insurance.  (Pl. Mem. at 7).[2]

## B.  **Prior Proceedings**

Fouchécourt commenced this action by filing a complaint on May 14, 2007.  This Court has subject matter jurisdiction over the action pursuant to the diversity statute,

---

[2]    In an affidavit, Fouchécourt explains that the Workers Compensation Board refused to award him "lost time benefits" because he performed in another production for the Met soon after the accident.  (12/5/07 Fouchécourt Aff. ¶ 4).

28 U.S.C. § 1332(a)(2), as Fouchécourt is a citizen or subject of a foreign state (he resides in France) and the Met, Hartford, and Zeffirelli are "citizens" of New York or California, and the amount in controversy exceeds $75,000.  (Compl. ¶¶ 1-6).

The complaint initially asserted, in addition to a negligence claim, claims for conspiracy and fraud as well.  By stipulation, however, Fouchécourt discontinued the fraud and conspiracy claims and discontinued all claims as to Hartford.

This motion followed.

<u>**DISCUSSION**</u>

A.    <u>**The Workers' Compensation Law**</u>

The Workers' Compensation Law requires covered employers to secure "compensation" to its "employees" for "disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury," with certain limited exceptions, such as when the injury results solely from intoxication.  N.Y. Workers' Comp. Law § 10(1) (McKinney Supp. 2008).  Employers must obtain and maintain insurance to provide workers' compensation coverage for their employees, and the statute contemplates a no-fault scheme where the employee is covered and payment is secured by insurance, but the amount of the recovery is limited.  N.Y. Workers' Comp. Law § 50 (McKinney Supp. 2008); <u>see generally</u> 109 N.Y. Jur. 2d, <u>Workers' Compensation</u> § 1 (2005).

For covered "employees," the Workers' Compensation Law provides the exclusive remedy as against the "employer" and co-

employees.  <u>See, e.g.</u>, <u>Fung v. Japan Airlines Co.</u>, 9 N.Y.3d 351, 357 (2007) ("Workers' Compensation Law §§ 11 and 29(6) restrict an employee from suing his or her employer or coemployee for an accidental injury sustained in the course of employment."); <u>O'Rourke v. Long</u>, 391 N.Y.S.2d 553 (1976); <u>Quinlan v. Freeman Decorating, Inc.</u>, 160 F. Supp. 2d 681 (S.D.N.Y. 2001).  Indeed, § 11 of the Workers' Compensation Law provides:

> The liability of an employer prescribed by the last preceding section [§ 10] shall be <u>exclusive and in place of any other liability whatsoever</u>, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom, except that if an employer fails to secure the payment of compensation for his or her injured employees and their dependents as provided in section fifty of this chapter, an injured employee . . . may, at his or her option, elect to claim compensation under this chapter, or to maintain an action in the courts for damages on account of such injury . . . .

N.Y. Workers' Comp. Law § 11 (McKinney Supp. 2008) (emphasis added); <u>see also</u> <u>id.</u> § 29(6) (McKinney 2005) ("The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his or her dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ . . . .").

The Workers Compensation Law provides that the term "[e]mployee" includes:

> a professional musician or a person otherwise engaged in the performing arts who performs services as such for a television or radio

> station or network, a film production, a
> theatre, hotel, restaurant, night club or
> similar establishment unless, by written
> contract, such musician or person is
> stipulated to be an employee of another
> employer covered by this chapter.  "Engaged
> in the performing arts" shall mean performing
> service in connection with the production of
> or performance in any artistic endeavor which
> requires artistic or technical skill or
> expertise.

N.Y. Workers Comp. Law § 2(4) (McKinney Supp. 2008).

This provision was added to the definition of

"employee" in § 2(4) of the Worker's Compensation Law in 1986.[3]

In his memorandum explaining the bill, which modified both the

Labor Law with respect to unemployment insurance and the Workers'

Compensation Law with respect to workers' compensation coverage,

state senator James J. Lack wrote:

> This legislation would amend the Labor
> Law to bring professional musicians and
> performing artists under coverage of the
> Unemployment Insurance Law . . . . It would
> amend the Workers' Compensation Law to extend
> coverage for on-the-job injuries to
> musicians, persons in the performing arts and
> taxi drivers. . . .
>
> This legislation would clarify any
> confusion which presently exists regarding
> coverage of musicians and taxi drivers under
> Unemployment Insurance and Workers'
> Compensation.  There appears to be some
> confusion regarding the responsibility for
> providing coverage for the social benefit
> programs for musicians and taxi drivers.
> This legislation would clarify this and
> require unemployment insurance and workers'
> compensation coverage for these persons.

---

[3]    A copy of the Governor's Bill Jacket, which contains
the relevant legislative materials, has been submitted by defense
counsel as Exhibit E.

(DX E at 000005) (emphasis added).  Similarly, state assemblyman
Roger J. Robach explained in his memorandum:

> Concerning musicians and performers, the vast
> majority who are not in the 'star' category
> are under the direction of an employer,
> whether directly or as a contractor.  Under
> common law these groups are eligible as
> employees since they meet the test of being
> under an employer's direction, supervision,
> and control.  Currently these employees must
> now litigate to be awarded their due
> benefits.  Case law has consistently found in
> the employees['] favor.  This bill
> additionally and importantly will cover those
> individuals who do not realize their rights,
> they then will receive their rightful
> benefits.

(Id. at 000006-07) (emphasis added).

The General Counsel of the Workers' Compensation Board
wrote that the Board had "no objection" to the proposed
legislation.  She stated that although there was "less of a
problem with regard to the coverage of musicians or other
performing artists," the proposed legislation "specifically
grants coverage to all such persons."  (Id. at 000027).  The
President of Local 802, a musicians' union, supported the bill
and noted that "[t]his bill defines our professional musician
members and other workers in the performing arts as employees for
the purposes of workers' compensation and unemployment and
disability insurance benefits."  (Id. at 000070).

**B.  Application**

The issue presented is whether Fouchécourt was an
"employee" of the Met for purposes of the Workers' Compensation
Law.  If so, his claims are barred, and he is limited to his

- 7 -

remedies under the statute.  For the following reasons, I hold
that he was an "employee" for purposes of the Workers'
Compensation Law.

First, Fouchécourt fits squarely within the plain words
of the statutory definition.  The Workers' Compensation Law
defines "employee" to include a "person . . . engaged in the
performing arts who performs services as such for a . . . theatre
. . . or similar establishment," who is not an employee of
another employer covered by the Workers' Compensation Law.  N.Y.
Workers' Comp. Law § 2(4).  Fouchécourt was an opera singer
providing services in the performing arts at the Metropolitan
Opera House, and he was not employed by any other employer
covered by the statute.  (See Pl. Mem. at 10 (maintaining that
Fouchécourt was an "independent contractor")).  Consequently,
Fouchécourt clearly falls within the statutory definition of
"employee."

Second, the legislative history demonstrates that the
New York State legislature intended to cover professional
musicians and performing artists without regard to whether they
were employees or independent contractors.  Therefore,
Fouchécourt's argument that he was an "independent contractor" is
beside the point.  Even assuming he was an independent contractor
for tax or other purposes, he was an "employee" for purposes of
the Workers' Compensation Law.  The statutory definition does not
turn on whether a particular musician or performing artist is an
employee or an independent contractor in light of the factors

- 8 -

usually considered in making such a determination[4]; rather, all musicians and performing artists are deemed to be "employees" for these purposes.  (See DX E at 000006-7 (state assemblyman Robach writing that majority of "musicians and performers" were not in "'star' category" and thus were "under the direction of an employer, whether directly or as a contractor") (emphasis added)).  The legislative history to the 1986 amendment shows that the New York legislature wanted to eliminate the debate, at least for these purposes, and professional musicians and performing artists were deemed to be "employees" so that they could be eligible for unemployment insurance and workers' compensation benefits.

Third, Fouchécourt has already received some benefits under the Workers' Compensation Law, as a portion of his medical bills were paid by the workers' compensation insurance.  Having accepted these benefits, he cannot very well argue now that the limitations of the statute should not apply.  See Makarova v. United States, 201 F.3d at 115.  Moreover, to the extent he was denied benefits for lost time, it appears that he was denied these benefits not because he was an independent contractor, but because he was gainfully employed again shortly after the accident.

Fourth, although there do not appear to be any reported decisions addressing the interpretation of the "professional

---

[4]    See, e.g., Makarova v. United States, 201 F.3d 110, 114 (2d Cir. 2000) ("the typical test of whether one is an independent contractor lies in the control exercised by the employer, and in who has the right to direct what will be done and when and how it will be done").

musicians" and "performing artists" language in the definition of
"employee" in § 2(4) of the Workers' Compensation Law, the
existing case law supports the conclusion that Fouchécourt is an
"employee" for these purposes.  In <u>Makarova</u>, for example, the
renown professional ballerina Natalia Makarova was injured in
1982 when a piece of scenery fell on her shoulder while she was
performing at the Kennedy Center for the Performing Arts in
Washington, D.C.  201 F.3d at 112.  The Second Circuit addressed
the question whether Makarova was limited to her workers'
compensation remedies because she was an "employee" of the
Kennedy Center.  The Court considered the issue under both New
York and District of Columbia law and held that Makarova was an
"employee" and not an "independent contractor" for these
purposes.  <u>Id.</u> at 114-15.  Although the decision was issued in
2000, it did not discuss the definition of "employee" in § 2(4)
of the New York Workers' Compensation Law.

        In <u>Jack Hammer Associates, Inc. v. Delmy Productions,</u>
<u>Inc.</u>, a professional actor brought suit against the production
company that had engaged him to perform in a musical in Europe.
He was injured when two co-employees who were allowed to become
intoxicated during a performance assaulted him, and he sued the
production company.  499 N.Y.S.2d 418, 419 (1st Dep't 1986).  The
issue was whether he was barred by the exclusive remedies
provisions of the Workers' Compensation Law from bringing suit
because he was an "employee" of the production company.  <u>Id.</u> at
419-20.  He had entered into a written contract for a stipulated

sum and was required to perform in a certain number of shows on prescribed dates.  He was obligated to follow the script and was subject to the supervision of the play's director.  Id.  The First Department held:  "We conclude upon these facts that Hammer was an employee, as a matter of law, and not an independent contractor as he suggested."  Id. at 420.  This decision -- which was rendered in March 1986 -- did not discuss the statutory definition of "employee" at issue here.  (See DX D at 000001 (amendment to § 2(4) signed into law in August 1986)).

These cases show that the courts have tended to hold that performing artists were "employees" for purposes of the workers' compensation laws.  Significantly, these cases reached that conclusion without even considering the language that was added to the Workers' Compensation Law by the 1986 amendment.  The 1986 amendment sought to eliminate these kinds of fact-intensive inquiries by providing that all professional musicians and performing artists were deemed "employees" for these purposes.

One other case is worth noting.  In In re Chmiel, the Third Department considered the parallel language in the New York Labor Law applicable to unemployment insurance, which provides that a person is an "employee" for purposes of receiving unemployment insurance benefits if he or she provides services "as a professional musician or a person otherwise engaged in the performing arts, and performing services as such for a television or radio station or network, a film production, a theatre, hotel,

- 11 -

restaurant, night club or similar establishment." 653 N.Y.S.2d
445, 446 (3d Dep't 1997) (quoting N.Y. Labor Law § 511(1)(b)(1-
a)). This language is identical to the language in § 2(4) of the
Workers' Compensation Law. The court held that a film editor
engaged by a sound and video company to provide film mixing and
transferring services was an "employee" and not an "independent
contractor" for purposes of unemployment insurance because her
services required "artistic or technical skill or expertise" and
she was therefore "engaged in the performing arts" for a "film
production" company. Id. (quoting statute). The court observed:

> This construction is consistent with the
> legislative intent behind the statute which
> is to extend the availability of unemployment
> insurance and workers' compensation benefits
> to those in the performing arts.

Id. (citing 1986 Bill Jacket).

## CONCLUSION

For the reasons set forth above, I hold that
Fouchécourt is an "employee" for purposes of the New York State
Workers' Compensation Law. Accordingly, he is barred by the
exclusive remedies provisions of the statute from bringing this
suit. The complaint is dismissed, with prejudice but without
costs or fees.[5] The Clerk of Court shall close the case.

SO ORDERED.

Dated:   New York, New York
         March 24, 2008

DENNY CHIN
United States District Judge

---

[5]    Zeffirelli has not yet been served with process, but
the complaint is dismissed as to him as well.

- 12 -